# 11-3918

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

JOSELITO VAZQUEZ GOMEZ,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF AND SPECIAL APPENDIX OF DEFENDANT-APPELLANT**

MARY ELIZABETH MULLIGAN
JESSICA A. MURZYN
FRIEDMAN KAPLAN SEILER
  & ADELMAN LLP
7 Times Square, 28th Floor
New York, New York 10036
(212) 833-1100

*Attorneys for Defendant-Appellant*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF THE CASE.......................................................................2

STATEMENT OF RELEVANT FACTS ...............................................................3

    A.    Learner Permit Application ...................................................3

    B.    Passport Application...............................................................4

    C.    The Appellant's Arrest and Interrogation ............................5

    D.    The First Indictment .............................................................8

    E.    The Attempted Plea ..............................................................8

    F.    Trial and Sentencing............................................................10

ARGUMENT ....................................................................................................12

I.    THE DISTRICT COURT VIOLATED RULE 11 WHEN
    IT PREVENTED THE APPELLANT FROM PLEADING GUILTY .........12

    A.    The District Court Erred By Requiring The Appellant To Admit
        Facts Extraneous To The Offense Charged Before Accepting
        His Guilty Plea ...................................................................13

        1.    The District Court's Error Was Not Harmless
            Because It Resulted in a Sentence of 45 Months
            Instead of 2 to 8 Months ........................................18

II.    THE DISTRICT COURT ERRED BY ADMITTING
       STATEMENTS MADE BY THE APPELLANT AT THE TIME
       OF HIS ARREST BECAUSE HE DID NOT VOLUNTARILY,
       KNOWINGLY, AND INTELLIGENTLY WAIVE HIS MIRANDA
       RIGHTS ...................................................................................19

       A.    There Was No Voluntary, Knowing, And Intelligent Waiver of
             Appellant's Rights .............................................................20

             1.    The Government Failed To Prove That The Appellant
                   Voluntarily, Knowingly, And Intelligently Waived
                   His Right To Remain Silent .......................................21

                   a.    The District Court's Factual Findings Regarding
                         the Federal Agents' Actions and Testimony Were
                         Clearly Erroneous ...........................................23

                   b.    The District Court's Findings Regarding the
                         Appellant's Ability to Understand English Were
                         Based on Mistakes of Law and Fact ...............25

       B.    The Appellant's Right to Counsel Was Violated ................28

III.   THE GOVERNMENT VIOLATED FEDERAL RULE OF
       CRIMINAL PROCEDURE 16(a)(1)(A) BY ITS FAILURE TO
       DISCLOSE THE APPELLANT'S ORAL STATEMENTS ........................31

       A.    Relevant Facts ..................................................................32

             1.    Discovery ................................................................32

             2.    Suppression Hearing ...............................................33

             3.    Trial .......................................................................35

             4.    Post-Trial Motion ...................................................36

       B.    Applicable Law .................................................................36

       C.    The Government's Failure To Disclose Appellant's Statements
             Caused Substantial Prejudice ...........................................39

ii

IV.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
      APPELLANT'S CONVICTION FOR AGGRAVATED IDENTITY
      THEFT ........................................................................................43

      A.    Standard of Review ............................................................45

      B.    Discussion ...........................................................................45

            1.    The Agents' Testimony.............................................46

            2.    The Post-Arrest Written Statement...........................48

            3.    Old Navy Application and Statements......................50

            4.    Birth Certificate and Social Security Number. .........53

V.    NUMEROUS OTHER ERRORS DENIED APPELLANT
      A FAIR TRAIL.........................................................................54

CONCLUSION...................................................................................55

CERTIFICATE OF COMPLIANCE...................................................56

iii

# TABLE OF AUTHORITIES

Page(s)

CASES

*A.M. v. Butler,*
360 F.3d 787 (7th Cir. 2004) ...........................................................27

*Arizona v. Roberson,*
486 U.S. 675, 687 (1988)...........................................................29, 30

*Brady v. Maryland,*
373 U.S. 83 (1963)........................................................................54

*Colorado v. Connelly,*
479 U.S. 157 (1986).......................................................................22

*Duckworth v. Eagan,*
492 U.S. 195 (1989).......................................................................22

*Edwards v. Arizona,*
451 U.S. 477 (1981).......................................................................28

*Flores-Figueroa v. United States,*
556 U.S. 646, 129 S. Ct. 1886 (2009)..........................................43, 54

*Jackson v. Virginia,*
443 U.S. 307 (1979).......................................................................45

*Laughman v. Pennsylvania,*
Civ. A. No. 1:05-CV-1033, 2007 WL 2345295 (M.D. Pa. Aug. 16, 2007).......27

*McCarthy v. United States,*
394 U.S. 459 (1969).............................................................13, 14, 16

*Michigan v. Harvey,*
494 U.S. 344 (1990).......................................................................29

*Miranda v. Arizona,*
384 U.S. 436 (1966).......................................................................21

*Moran v. Burbine,*
475 U.S. 412 (1986) ......................................................................22

iv

2649267.2

*North Carolina v. Butler*,
441 U.S. 369 (1966)........................................................................21

*Oscar Gruss & Son, Inc. v. Hollander*,
337 F.3d 186 (2d Cir. 2003) ........................................................20

*Santobello v. New York*,
404 U.S. 257 (1971)........................................................................12

*United Sates v. DeSena*,
287 F.3d 170 (2d Cir. 2002) ........................................................45

*United States v. Adams*,
448 F.3d 492 (2d Cir. 2006) ................................................13, 14

*United States v. Adeniji*,
31 F.3d 58 (2d Cir. 1994) ..............................................................38

*United States v. Alarcon*,
95 Fed. Appx. 954 (10th Cir. 2004)............................................23

*United States v. Allen*,
127 F.3d 260 (2d Cir. 1997) ........................................................44

*United States v. Alvarez*,
987 F.2d 77 (1st Cir. 1993)...........................................................43

*United States v. Boon San Chong*,
829 F.2d 1572 (11th Cir. 1987) ..................................................22

*United States v. Brown*,
52 F.3d 415 (2d Cir. 1995) ..........................................................19

*United States v. Caba*,
955 F.2d 182 (2d Cir. 1992) ........................................................20

*United States v. Castorena-Jaime*,
117 F. Supp. 2d 1161 (D. Kan. 2000), *aff'd*, 285 F.3d 916 (10th Cir.
2002) ...............................................................................................22

*United States v. De La Rosa*,
346 Fed. Appx. 468 (11th Cir. 2009)..........................................53

v

*United States v. Garibay*,
  143 F.3d 534 (9th Cir. 1998) .................................................................21, 23, 27

*United States v. Gaspar*,
  344 Fed. Appx. 541 (11th Cir. 2009)......................................................48, 50, 51

*United States v. Grajeda-Gutierrez*,
  372 Fed. Appx. 890 (10th Cir. 2010).................................................................53

*United States v. Heredia-Fernandez*,
  756 F.2d 1412 (9th Cir. 1985) ........................................................................22

*United States v. Ible*,
  630 F.2d 389 (5th Cir. 1980) ..........................................................................43

*United States v. Jackson*,
  335 F.3d 170 (2d Cir. 2003) ...........................................................................45

*United States v. Lucas*,
  963 F.2d 243 (9th Cir. 1992) ..........................................................................29

*United States v. Maddox*,
  48 F.3d 555 (D.C. Cir. 1995)..........................................................................18

*United States v. Mancinas-Flores*,
  588 F.3d 677 (9th Cir. 2009) .............................................................13, 14, 18

*United States v. Martinez*,
  54 F.3d 1040 (2d Cir. 1995) ...........................................................................45

*United States v. McElroy*,
  697 F.2d 459 (2d Cir. 1982) .....................................................................37, 38

*United States v. Morgan*, Crim. A. No. 2:06-cr-0164; 2010 WL 1714705
  (E.D. Pa. Apr. 27, 2010) ................................................................................49

*United States v. Navedo*,
  516 F.2d 293 (2d Cir. 1975) ...........................................................................13

*United States v. Percevault*,
  490 F.2d 126 (2d Cir. 1974) ...........................................................................37

*United States v. Petito*,
  671 F.2d 68 (2d Cir. 1982) .............................................................................38

vi

*United States v. Pinckney*,
    85 F.3d 4 (2d Cir. 1996) ....................................................................45

*United States v. Rea-Beltran*,
    457 F.3d 695 (7th Cir. 2006) ........................................13, 14, 15, 16

*United States v. Rivas*,
    377 F.3d 195 (2d Cir. 2004) .............................................................40

*United States v. Salyer*,
    Cr. No. S-10-0061, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010)....................54

*United States v. Short*,
    790 F.2d 464 (6th Cir. 1986) ............................................................23

*United States v. Simmons*,
    661 F.3d 151 (2d Cir. 2011) .............................................................20

*United States v. Thomas*,
    239 F.3d 163 (2d Cir. 2001) ............................................38, 39, 43

*United States v. Tubol*,
    191 F.3d 88 (2d Cir. 1999) ..............................................................55

*United States v. United States Gypsum Co.*,
    333 U.S. 364 (1948)........................................................................20

*United States v. Washington*,
    969 F.2d 1073 (D.C. Cir. 1992)......................................14, 15, 16, 18

*Wroten v. Felker*,
    No. CV 08-04352-AG, 2009 WL 3171705 (C.D. Cal. Sept. 30, 2009).............27

## STATUTES AND RULES

18 U.S.C. § 1028A .....................................................................passim

18 U.S.C. § 1542 .......................................................................passim

28 U.S.C. § 1291 ...............................................................................1

42 U.S.C. § 408(a)(7)(B) ...................................................2, 9, 12

FED. R. CRIM. P. 11 ..................................................12, 13, 14, 16

FED. R. CRIM. P. 16 ........................................................................passim

FED. R. CRIM. P. 29(A)...........................................................................44

FED. R. CRIM. P. 33.........................................................................36, 54

FED. R. CRIM. P. 404(b)...........................................................11, 52, 54

viii

## JURISDICTIONAL STATEMENT

On September 23, 2011, appellant filed a timely notice of appeal from a final judgment of conviction entered on September 22, 2011 by the Honorable Alvin K. Hellerstein. (A-901.) Appellant was sentenced to a term of imprisonment of 45 months. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Was the district court's refusal to permit the appellant to plead guilty an abuse of discretion?

2. Did the district court err when it determined that the appellant knowingly, voluntarily, and intelligently waived his *Miranda* rights after his arrest?

3. Did the district court err when it refused to vacate the appellant's conviction and order a new trial as a result of the government's failure to disclose the appellant's statements during interrogation in violation of Rule 16?

4. Did the district court err when it refused to vacate the appellant's conviction under 18 U.S.C. § 1028A and order a new trial because the government failed to prove beyond a reasonable doubt that the appellant knew that the means of identification submitted with his passport application belonged to a real person?

5.    Did the district court commit an error that denied appellant a fair trial, including admitting certain recorded prison calls into evidence where the government refused to represent that the prison calls contained no exculpatory material, or admitting evidence related to an Old Navy credit card pursuant to Rule 404(b) on the issues of identity, intent, absence of mistake, and the existence of a plan?

## STATEMENT OF THE CASE

The redacted Superseding Indictment charged appellant with four counts.  Count One charged appellant with making false statements in a passport application he submitted on or about September 15, 2008 in violation of 18 U.S.C. § 1542.  Count Two charged appellant with using a Social Security number assigned to another person to apply for a passport on or about September 15, 2008 in violation of 42 U.S.C. § 408(a)(7)(B).  Count Three charged appellant with using a Social Security number assigned to another person to apply for a New York State learner permit on or about October 16, 2007 in violation of 42 U.S.C. § 408(a)(7)(B).  Count Four charged appellant with aggravated identity theft in connection with the crimes charged in Counts One and Two in violation of 18 U.S.C. § 1028A.  (A-214-216.)

On June 30, 2010, the district court refused to accept appellant's guilty plea to the charge in the First Indictment.  (A-34.)  On September 28, 2010,

2

the district court denied appellant's motion to suppress. (A-181.) On October 18, 2010, appellant was convicted on all four counts on the redacted Superseding Indictment. (A-678.) On March 7, 2011, the district court denied appellant's motion for a new trial. (SPA-1.) On September 7, 2011, appellant was sentenced to 45 months' imprisonment, and an additional three years of supervised release. (A-820.)

## STATEMENT OF RELEVANT FACTS

### A.   Learner Permit Application

On October 16, 2007, the appellant apparently submitted an application for a learner permit to the New York State Department of Motor Vehicles. (A-733-734; A-516-517.) The name on the application was Erick Francisco Diaz, the Social Security number used was XXX-XX-1077 and the date of birth June 9, 1976. *Id.* The Driver's ID number on the application matched the driver license that was found on the appellant at the time of his arrest. (A-742.) The photograph on the license matched the photograph that was on file at the Division of Motor Vehicles for that Driver's ID number since December 26, 2001. (A-519-521; A-736.) The photograph and the driver license depicted the appellant; and the name Erick Diaz appeared on both.

At trial, the prosecution introduced records from the Social Security Administration indicating that the person who had been issued the Social Security

3

number listed on the learner permit application (XXX-XX-1077) had been born on

August 18, 1977 and that his name was "Eric Francisco Diaz Vazquez." (A-704-

732; A-537-538.)

**B.**    **Passport Application**

On September 12, 2008, the appellant supposedly submitted an

application for a U.S. Passport at the U.S. Post Office in Midtown Manhattan. (A-

688-699.)  The name on the application was Erick Ignacio Diaz Vazquez, the

Social Security number used was XXX-XX-8343 and the date of birth:  June 9,

1976.  *Id.*  Along with the passport application, the appellant submitted a birth

certificate for Erick Ignacio Diaz Vazquez with a matching birthdate, a Social

Security card in the name of Erick Ignacio Diaz Vazquez with the matching Social

Security number, and his driver license with the NYS Driver's ID Number 979-

600-001 (matching the number on the Learner Permit Application discussed

above).  *Id.*

At trial, Mr. Erick Ignacio Diaz Vazquez of Portland, Connecticut,

(not the appellant) testified that the information contained on the September 12,

2008 passport application and the birth certificate submitted in connection with it

were, in fact, his – his name, date of birth, Social Security number, and his parents'

names.  (A-380-387; A-788; A-790.)

C.      **The Appellant's Arrest and Interrogation**

On April 27, 2010, the appellant was arrested by officers of the New York City Police Department ("NYPD") at the parking garage where he worked in the Bronx, New York.  (A-833, ¶ 10; A-113-116; A-123-125.)  Upon arriving at the NYPD precinct, where he was placed in a holding cell, the appellant said, in broken English, that he wanted a lawyer.  (A-833, ¶ 11.)  However, the appellant was not provided with a lawyer at this time, nor at any other time on April 27, 2010.  (*Id.* ¶ 12.)  The appellant was then asked pedigree questions in English by the NYPD officers.  (A-833-834, ¶ 13.)  When the appellant indicated that he did not understand most of what the officers were saying in English, a Hispanic officer was found, and he asked the appellant the pedigree questions in Spanish.  (*Id.*)

A few hours later, the appellant was handed over to federal agents, Special Agent Charles Payne and Agent Michael Carpenter of the U.S. Department of State.  (A-834, ¶ 14; A-72-74.)  The agents took the appellant to a room with a holding cell, put the appellant in the holding cell, removed his handcuffs, and then joined him inside the holding cell.  (A-834, ¶ 14; A-76; A-142; A-150.)  One of the agents who interrogated the appellant spoke only English and did not seem to understand any Spanish (A-74 (Agent Payne confirmed at he does not speak Spanish)); the other agent attempted to speak a few words in Spanish but also spoke mostly in English.  (A-834, ¶ 15; A-133 (Agent Carpenter confirmed that he

5

speaks "some Spanish," but is not fluent).)  No Spanish interpreter was provided while the federal agents were in the holding cell with the appellant.  (A-834, ¶ 16.)

As the federal agents began questioning the appellant in English, he said to them in simple English that he did not want to answer any questions without a lawyer.  (A-834, ¶ 17.)  In response, one of the agents said O.K. and then took out a form on which was printed, in English, the text of the *Miranda* rights. (*Id.*; *see also* A-193.)  One of the agents read from the printed form in English (A-76, A-79), but the appellant did not understand most of what the agent was saying. (A-834, ¶ 17.)  Agent Payne, who took the appellant into federal custody, testified that the State Department has a form with the Miranda warning in the Spanish language.  (A-95.)  Agent Carpenter searched for the Miranda forms in both English and Spanish, and was able to locate only the English form.  (A-143-144.) Ultimately, the agents only provided the English *Miranda* form to the appellant. (A-95.)  After the agent stopped reading from the form, he asked the appellant if he understood; the appellant's response was that he understood only a little.  (A-834, ¶ 17.)  One of the agents then used words and gestures to ask the appellant to sign the advisement and waiver of rights form.  (A-835, ¶ 18.)  The appellant did so but he did not read the form before he signed it with the name "Erick Diaz."  (*Id.*; *see also* A-193; A-138.)

6

After signing the waiver form, the appellant was questioned by the agents in the holding cell. (A-835, ¶¶ 21-23; A-427-431.) During this questioning, the appellant could understand a little of what the agents asked him, and he responded to them in a mix of English and Spanish. (*Id.* ¶¶ 22-23.) After the questioning, the agents put another form in front of the appellant and gestured for him to write on it. (A-835; ¶ 24; *see also* A-202-203.) By contrast to the previous form, this form had instructions and information printed in the Spanish language – even though the State Department also had the same form in the English language. (A-835, ¶ 24; A-97-98; A-145.) Agent Payne confirmed that he gave the appellant the form in Spanish because it was important that he write his statement as accurately as possible. (A-98.) After reading the form in Spanish, the appellant wrote a brief statement in Spanish. (A-835, ¶ 24; A-81.) The appellant signed the first page of the statement toward the bottom with the name "Erick Diaz." (A-836; ¶ 25; A-202.) However, when the appellant started to sign the second page of the statement with the name "Erick," one of the agents stopped him and told him to sign with the name "Joselito Vazquez Gomez" (the name the appellant gave agents when he was questioned). (A-836, ¶ 25; A-203.) The appellant's written statement on April 27, 2010 was:

> I, Joselito Vazquez Gomez, was born in Santo Domingo on July 25, 1975. I came here to this country via Mexico in 1999. I got these papers for 500 dollars. I did it because I wanted to work to support myself and give to

7

> my girlfriend and her son (or children?).  I hope you have
> consideration for me and if you can send me to my
> country as soon as possible I would appreciate it.  I can
> pay for my fare.  I sincerely ask forgiveness if I have
> done harm/hurt any person with this I did   Erick Diaz

(A-202; A-205.)

### D.     The First Indictment

On May 5, 2010, the government filed a one-count Indictment (the "First Indictment") that charged the appellant with making false statements in a passport application, in violation of 18 U.S.C. § 1542.  (A-14.)  Specifically, the government alleged that the appellant submitted an application for a U.S. passport containing a name, date of birth, and a Social Security number that he falsely represented were his.  (*Id.*)

### E.     The Attempted Plea

Following the First Indictment in this case, the government took the position that, the appropriate sentencing range was two to eight months' imprisonment, and a fine of $500 to $5,000.  (A-17; A-825.)  The appellant indicated his desire to plead guilty, and the court recognized that a plea would likely involve his serving very little additional time.  (A-17.)  The appellant also advised the district court and the government that he did not want to be sentenced under the name "Joselito Vazquez Gomez," but wanted to be sentenced under his real name – Erick Diaz.  (A-17-18.)  Defense counsel advised the district court that the appellant has been known as Erick Diaz since at least 2001 – well prior to the

8

allegations in the First Indictment. (A-28-29.) Moreover, the appellant was

arrested in the State of New York, and served prison time under the name Erick

Diaz in 2003. (A-28.) The government was prepared to go forward with a guilty

plea at the June 30, 2010 court appearance. (A-31.) However, the district court

refused to accept the plea without further "investigation." (A-31-32; A-34.) The

"investigation" did not turn up any proof of the appellant's identity. The

government was unable to prove that the appellant *is not* Erick Diaz, or that the

appellant *is* Joselito Vazquez Gomez. (A-42-43.) In fact, the only "proof" of

identity the government found was the fact that the appellant's fingerprints

matched those from his arrest in 2003. (A-44.)

   After the district court continued to refuse to accept the appellant's

guilty plea, the government revised its position and issued a second *Pimental* letter.

(A-827-830.) The government took the position that the Sentencing Guidelines

range was ten to sixteen months' imprisonment, and a fine of $2,000 to $20,000.

(A-829.) Not surprisingly, the appellant refused to accept the government's

change of position, and declined to plead guilty. (A-52-53.) The government

responded with the Superseding Indictment on August 16, 2010. (A-57-61.) This

Indictment contained seven counts: two counts of making false statements in a

passport application in violation of 18 U.S.C. § 1542; three counts of misuse of a

Social Security number in violation of 42 U.S.C. § 408(a)(7)(B); and two counts of

9

aggravated identity theft in violation of 18 U.S.C. § 1028A. (*Id.*) The district court dismissed three of these counts on multiplicity grounds, and the government settled on the redacted Indictment charging, four counts. *Id.* On October 2, 1020, the government issued a third *Pimental* letter, taking the position that appellant's Sentencing Guidelines range was 39 to 45 months' imprisonment and a fine of $3,000 to $30,000. (A-853.)

## F.    Trial and Sentencing

The trial commenced on October 13, 2010. (A-325.) The government called ten witnesses, including the postal clerk who was on duty at the midtown post office on September 15, 2008 when the passport application was submitted and the inspector who detected the alleged fraud in the application. (A-337-556.) In addition, the prosecutor called Erick Ignacio Diaz Vazquez who identified his date of birth, social security number and other personal information. (A-380-387.) There was no evidence that Mr. Diaz had ever met or spoken to the appellant. The government also called a representative of the DMV who testified concerning the 2007 learner permit application submitted in the name of Erick Francisco Diaz and a DMV photo taken in 2001 with the signature "Erick Diaz" underneath. (A-513-526; A-733-734; A-736.) The photo depicted the appellant and confirmed that he had been known as "Erick Diaz" since at least 2001. (A-736.) In addition, an employee of the Social Security Administration testified concerning the agency's

10

files for a Social Security number issued to Eric Francisco Diaz Vazquez and the 13 applications for replacement cards associated with that number and a Social Security number issued to Erick Ignacio Diaz Vazquez which had only one application for a replacement card in 2008 which was missing from the file. (A-528-544; A-700-703; A-704-732.)

Over defense counsel's objection, the government introduced testimony and evidence pursuant to FED. R. CRIM. P. 404(b) that an Old Navy credit card had been issued to Erick Diaz at the same address on the passport application and using the Social Security number issued to Erick Ignacio Diaz Vazquez. (A-474-480; A-760.)

Members of the NYPD testified concerning the appellant's arrest and identified items seized from him at the time of his arrest including a New York State driver license and Old Navy card both in the name of Erick Diaz which were admitted into evidence. (A-392-396; A-742; A-743-744.) The prosecutor elicited testimony from Agents Payne and Carpenter about the circumstances of the appellant's transfer into federal custody and interrogation. (A-416-426; A-454-458.) Both agents testified as to oral statements the appellant made during post-arrest questioning. (A-426-431; A-458-467.) The government also introduced the appellant's post-arrest written statement which was in Spanish. (A-438-439; A-737-741.) There was no reference to a passport application, learner permit, or

11

Social Security number in the written statement. (A-737-741.) Finally, the prosecutor introduced recorded phone calls made by the appellant, in Spanish, from the Metropolitan Correctional Center to various women, as well as English translations of the phone calls. (A-547-550; A-745-759.) During one of these calls, the appellant requested a copy of a Social Security card belonging to Eric Francisco Diaz Vazquez and possibly discussed his aborted attempt to plead guilty during a court appearance. (A-745-747; A-748-749.) The appellant called no witnesses. (A-561.)

On October 18, 2010 a jury convicted appellant of one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542, two counts of misuse of a Social Security number in violation of 42 U.S.C. § 408(a)(7)(B), and one count of aggravated identify theft in violation of 18 U.S.C. §1028A. (A-678.) The district court sentenced appellant to 45 months' imprisonment. (A-820.)

## ARGUMENT

## I.

## THE DISTRICT COURT VIOLATED RULE 11 WHEN IT PREVENTED THE APPELLANT FROM PLEADING GUILTY

It is well-established that there is no absolute right to have a guilty plea accepted. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). District courts have significant discretion in accepting or rejecting guilty pleas, and

12

appellate courts will reverse only when that discretion is abused. *See United States v. Rea-Beltran*, 457 F.3d 695, 701 (7th Cir. 2006); *United States v. Navedo*, 516 F.2d 293, 298 (2d Cir. 1975).

Courts, however, do not have unfettered discretion to reject a defendant's guilty plea. "[A] court cannot act arbitrarily in rejecting a plea." *Rea-Beltran*, 457 F.3d at 701. A failure to "state on the record a sound reason for rejecting a plea" requires reversal. *Id.* (citation omitted). In general, "[a] district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *United States v. Adams*, 448 F.3d 492, 498-99 (2d Cir. 2006) (citation omitted).

**A.** **The District Court Erred By Requiring The Appellant To Admit Facts Extraneous To The Offense Charged Before Accepting His Guilty Plea**

A defendant may plead not guilty, guilty or (with the court's consent) *nolo contendere*. FED. R. CRIM. P. 11(a)(1). "[A] guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Rule 11 "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *Id.* at 465. The rule imposes a number of requirements on a district court confronted with a guilty plea – including informing the defendant of his

13

rights and the consequences of his plea, and ensuring that the plea is voluntary. *See United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009).

One of Rule 11's requirements is that the court "determine that there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(3). This requirement is meant to ensure that a defendant does not plead guilty based on a misunderstanding of his conduct in relation to the elements of the crime charged. *See McCarthy*, 394 U.S. at 466-67.[1] "Only if defendant had denied committing a specific element of the offense or protested his innocence even after demonstrating that he understood the charge would the court have had discretion to reject his plea for lack of a factual basis." *Mancinas-Flores*, 588 F.3d at 685. A district court may not reject a guilty plea because the defendant refuses to admit facts extraneous to the elements required to prove the offense charged. *See Rea-Beltran*, 457 F.3d at 701-702; *United States v. Washington*, 969 F.2d 1073, 1077-78 (D.C. Cir. 1992).

In *Rea-Beltran*, the defendant was charged with illegal reentry. 457 F.3d at 702. When the defendant stated that he thought he had permission to reenter the country, the court believed the defendant to be expressing his innocence and refused to accept his guilty plea. *See id.* at 701. The Seventh Circuit found this refusal to be an abuse of discretion because the district court "misapprehended

---

[1] Despite the revisions to Rule 11 since the McCarthy decision, the "*McCarthy* rationale remains viable for substantiating the requirement of a sufficient factual basis for a plea." *Adams*, 448 F.3d at 500 n.3.

the elements of the Government's burden" in proving a violation of the illegal reentry statute. *Id.* at 701-702. Even if the defendant reasonably, but mistakenly, believed that he had permission to reenter the United States, he would still be guilty of violating the statute. *See id.* at 702. The Seventh Circuit found the district court to have committed an error of law, vacated the defendant's conviction, and remanded the case with instructions to permit the defendant to offer a guilty plea on the terms originally agreed to by the government. *See id.* at 702.

In *United States v. Washington*, two co-defendants were charged with the distribution of cocaine. 969 F.2d at 1077-78. While one defendant (Gedde) was willing to admit all facts necessary to establish his guilt under the relevant statute, he refused to acknowledge that he distributed the cocaine to his co-defendant (Washington). *See id.* at 1078. The district court refused to accept Gedde's guilty plea. *See id.* at 1077. The appellate court found that refusal to be an abuse of discretion, emphasizing that "Gedde should not have been penalized for refusing to take a position on facts external to the offense charged." *Id.* at 1079.

Here, as in *Rae-Beltran* and *Washington*, the district court abused its discretion by refusing to accept the appellant's guilty plea. The court insisted that the appellant admit facts extraneous to the elements required to prove the offense

15

charged – just as the *Washington* court wanted the defendant in that case to implicate his co-defendant, and the *Rae-Beltran* court wanted the defendant to admit that he did not have permission to enter the country. *See Rae-Beltran*, 457 F.3d at 701-702; *Washington*, 969 F.2d at 1077-78. The appellant in this case refused to state that his name was "Joselito Vazquez Gomez" or to admit that he was not "Erick Diaz." Because these facts were not elements of the crime charged, the district court erred in rejecting the plea.

On June 30, 2010, the appellant appeared in court for the purpose of pleading guilty. (A-27.) At that time, the First Indictment contained only one count – making false statements in a passport application, in violation of 18 U.S.C. § 1542. (A-14.) Upon being advised that the appellant sought to plead guilty, the district court should have determined that there was a "factual basis for the plea," including "an admission of all the elements of a formal criminal charge." *McCarthy*, 394 U.S. at 466; FED. R. CRIM. P. 11(b)(3). As explained by the government during the attempted plea hearing, "the government's position would be that the case is complete at least for the purposes of a plea if the defendant were to admit that Erick Ignacio Diaz Vasquez is not his true name and he put that on an application." (A-31.) Admitting all the elements of a charge under 18 U.S.C.

16

§ 1542 did not require the appellant to admit that he is "Joselito Vazquez Gomez" or the name he was given at birth.[2]

Nevertheless, the district court would not permit the appellant to plead guilty to the Section 1542 charge without knowing that information. (A-30-31.) ("I am going to want a full understanding of the situation. I'm going to want to know what his name was at birth. I want to know what the records are.") The court made clear that it was not "going to just simply take a plea that satisfies perhaps the tactical requirements of passport fraud without getting the essential information of the defendant before me." (A-31.) Far from requiring the appellant to admit the essential elements of the crime charged, the district court demanded that the government undertake further investigation – beyond the elements of a Section 1542 charge – "Get the records. Get the birth certificate. Get the driver's license. Do an investigation." (A-31-32.)[3] The court insisted, moreover, that "this is not just a passport fraud case. Don't approach it that way." (A-36.)

The court's desire to treat this as more than a passport fraud case and demand that the appellant admit facts beyond the elements of the crime charged were mistakes of law and abuses of discretion. The appellant was willing to admit

---

[2] The appellant had been known as "Erick Diaz" for a number of years before the crime alleged in the First Indictment. For example, the appellant was arrested in New York State as "Erick Diaz," and served time in the State system as "Erick Diaz." (A-28.)

[3] After conducting its investigation, the government was unable to prove the appellant's identity. (A-42-43.)

17

each element of a Section 1542 offense – he did not protest his innocence or deny

committing any aspect of the crime.  *See generally Mancinas-Flores*, 588 F.3d at

685.  Rather, the appellant simply preferred to plead guilty using the name by

which he was known.  (A-17.)  Accordingly, the court should have accepted the

appellant's guilty plea to the Section 1542 offense.  This Court should find the

refusal to do so was an abuse of discretion, vacate the appellant's conviction, and

remand the case with instructions to permit the appellant to offer a guilty plea on

the original Indictment.

    1.    **The District Court's Error Was Not Harmless
               Because It Resulted in a Sentence of 45 Months
               Instead of 2 to 8 Months**

The district court's error in refusing to accept the appellant's plea was

not harmless.  "Prejudice is more readily apparent where the rejection of the plea

leads to a conviction of a greater offense than that offered in a plea agreement."

*Washington*, 969 F.2d at 1079; *see also United States v. Maddox*, 48 F.3d 555, 560

(D.C. Cir. 1995) (finding that the district court's error was prejudicial when the

defendants were convicted of "several offenses in addition to those involved in

their plea agreements").

In this case, at the time when the appellant sought to plead guilty, the

First Indictment included one charge (A-14), and the government believed that the

appropriate sentencing range was two to eight months.  (A-825.)  Defense counsel

was in the process of negotiating a plea that would involve the appellant's serving little additional time. (A-17.) After the court rejected the appellant's guilty plea, the prosecution responded with the Superseding Indictment, which increased the number of counts from one to seven.[4] (A-57-62.) The *Pimental* letter that followed the Superseding Indictment calculated the appellant's sentencing range as being 39 to 45 months. (A-853.) Ultimately, the appellant was convicted on four counts, including aggravated identity theft (A-678), and sentenced to 45 months' imprisonment (A-820.) There is no question that the district court's refusal to accept the appellant's guilty plea resulted in a conviction on several offenses in addition to the one to which he would have pled guilty and a significantly longer sentence.

## II.

### THE DISTRICT COURT ERRED BY ADMITTING STATEMENTS MADE BY THE APPELLANT AT THE TIME OF HIS ARREST BECAUSE HE DID NOT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVE HIS *MIRANDA* RIGHTS

"The standard of review observed by this court in evaluating the district court's ruling in a suppression motion is 'clearly erroneous' as to that court's factual findings viewing the evidence in the light most favorable to the government and *de novo* as to questions of law . . ." *United States v. Brown*, 52

---

[4] Three of these counts were dismissed on multiplicity grounds, and a redacted Indictment included only four counts. (A-214-216.)

F.3d 415, 420 (2d Cir. 1995); *see also United States v. Caba*, 955 F.2d 182, 185

(2d Cir. 1992) (applying the clearly erroneous standard in determining the validity

of waiver of defendant's *Miranda* rights). "[A] finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed."

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (citing

*United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Mixed

questions of law and fact are reviewed *de novo*. *See United States v. Simmons*, 661

F.3d 151, 155 (2d Cir. 2011).

A.    **There Was No Voluntary, Knowing, And Intelligent**
      **Waiver of Appellant's Rights**

        During the trial in this action, the district court permitted the

government to introduce evidence of the appellant's oral and written statements

made while he was in the custody of federal agents. (A-426-431; A-438-439; A-

458-467; A-737-738; A-740-741.) The court had previously denied the appellant's

motion to suppress that evidence (A-181-185) even though the government had

failed to demonstrate by a preponderance of the evidence that the appellant

knowingly, voluntarily, and intelligently waived his *Miranda* rights. The

appellant, who speaks Spanish and very little English (A-831-833, ¶¶ 3-9), was

read his *Miranda* rights in English while in the custody of federal agents (A-76; A-

79), and therefore could not have been deemed to have been advised of his rights,

20

or to have validly waived those rights. In addition, the appellant asserted his Fifth

Amendment right to counsel (A-833, ¶ 11; A-834, ¶ 17), but that right was ignored

both by NYPD police officers and later by the federal agents who interrogated him.

Each of these violations required the suppression of the appellant's oral and written

statements to the federal agents, and the admission of those statements into

evidence by the district court was clearly erroneous.

### 1. The Government Failed To Prove That The Appellant Voluntarily, Knowingly, And Intelligently Waived His Right To Remain Silent

The prosecution may use a defendant's statement at trial without

transgressing his Fifth Amendment right against self-incrimination only when the

decision to confess was the defendant's free choice. *See Miranda v. Arizona*, 384

U.S. 436, 444 (1966). To protect the Fifth Amendment right against self-

incrimination, the Supreme Court in *Miranda* ruled that police may not interrogate

a suspect who has been taken into custody without first warning the person of his

right to remain silent and right to legal counsel. *See id.* at 479. The suspect may

waive these rights, "provided the waiver is made voluntarily, knowingly and

intelligently." *Id.* at 444.

"There is a presumption against waiver." *United States v. Garibay*,

143 F.3d 534, 536 (9th Cir. 1998) (citing *North Carolina v. Butler*, 441 U.S. 369,

373 (1966)). The government has the burden of establishing by a preponderance

of the evidence that, after the *Miranda* warnings are administered, a suspect

waived his rights and that any statement he makes is truly the product of free

choice.  *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).  As the Supreme

Court stated in *Moran v. Burbine*, two distinct requirements must be satisfied for

the government to prove that a defendant validly waived his *Miranda* rights:

> *First*, the relinquishment of the right must have been
> voluntary in the sense that it was the product of a free
> and deliberate choice rather than intimidation, coercion,
> or deception.  *Second*, the waiver must have been made
> with a full awareness of both the nature of the right being
> abandoned and the consequences of the decision to
> abandon it.  Only if the totality of the circumstances
> surrounding the interrogation reveal both an uncoerced
> choice and the requisite level of comprehension may a
> court properly conclude that the *Miranda* rights have
> been waived.

475 U.S. 412, at 421 (1986) (internal quotation omitted) (emphases added).  The

Supreme Court has emphasized that the *Miranda* warnings must "reasonably

convey" to a suspect his rights.  *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989).

Language barriers must be taken into account because they may impair a suspect's

ability to act knowingly and intelligently.  *See United States v. Heredia-Fernandez*,

756 F.2d 1412, 1415 (9th Cir. 1985).  Language is not stumbling block when a

suspect is advised of his rights in a language he ostensibly understands.  *See United

States v. Boon San Chong*, 829 F.2d 1572, 1574 (11th Cir. 1987).  The issue arises

when the *Miranda* rights are given in English only.  *See United States v.*

*Castorena-Jaime*, 117 F. Supp. 2d 1161, 1171 (D. Kan. 2000), *aff'd*, 285 F.3d 916

(10th Cir. 2002). Giving the warnings in a language that a suspect cannot

understand does not reasonably convey to a suspect the substance of his rights. *See*

*United States v. Alarcon*, 95 Fed. Appx. 954, 956 (10th Cir. 2004). Courts have

found waivers of *Miranda* rights to be ineffective in cases involving language

barriers. *See Garibay*, 143 F.3d at 537 (finding the defendant's *Miranda* waiver

insufficiently knowing and intelligent where the defendant's "primary language is

Spanish and he understands only a few things in English"); *United States v. Short*,

790 F.2d 464, 469 (6th Cir. 1986) (finding that the defendant's *Miranda* waiver

was not knowing and intelligent where her "English was broken and her

understanding of English deficient").

> ### a. The District Court's Factual Findings Regarding the Federal Agents' Actions and Testimony Were Clearly Erroneous

A review of the "entire evidence" reveals that the district court's

factual findings regarding the appellant's waiver of his *Miranda* rights were clearly

erroneous and based on mistakes in its factual determinations. The district court

unconditionally credited the testimony of the federal agents who questioned the

appellant. (A-185.) He concluded that "the agents acted in good faith," that

"[t]hey spoke consistently," and that "what they say is correct." (*Id.*) However,

the agents' own actions – as they described at the suppression hearing – are at odds with their professed belief that the appellant understood English.

First, Agent Payne explained during the suppression hearing that the U.S. State Department has a Spanish language version of the *Miranda* warnings. (A-94-95.) Agent Carpenter made a point of searching the office where the appellant was being held for that Spanish language form, but was unable to find it. (A-137.) At that point, he and Agent Payne had no choice but to read the appellant the *Miranda* warnings in English because their Spanish language skills were limited. (A-12; A-133.) It was either fail to advise the appellant of his rights, or Mirandize him in English and hope he understood. The agents chose to advise him of his rights by reading them in English from a printed form.[5] (A-834, ¶ 17.) The appellant did not understand most of what they were saying. (*Id.*) But, he then signed the *Miranda* form "Erick Diaz." (A-193.)

Second, after interrogating the appellant, the agents asked him to prepare a written statement. (A-97-98.) This time, the agents were able to locate a Spanish language form that contained instructions in Spanish. (A-80.) The agents also permitted the appellant to write a brief statement in Spanish on the form. He began to sign this statement as "Erick Diaz" as well, but one of the agents stopped

---

[5] The appellant was arrested by NYPD officers and transferred to federal custody for interrogation. (A-74-76.) There is no question that he was subject to "custodial interrogation" within the meaning of *Miranda* at all relevant times. The NYPD officers who arrested the appellant did not attempt to read him his *Miranda* rights.

24

him and insisted that he sign as "Joselito Vazquez Gomez." (A-836, ¶ 25; A-202-206.) There is no evidence that the agents sought to obtain a written statement from the appellant in English.

\*      \*      \*

The agents' actions during the interrogation make clear that they doubted the appellant's ability to understand English. Agent Carpenter searched for the Spanish language *Miranda* form because he questioned the appellant's ability to understand English. When it came time for the appellant to write down his confession, they asked the appellant to do so in the language they knew he understood the best – Spanish. In contrast, when it suited them – either because they could not find the Spanish language *Miranda* form or because they were content with the appellant's inability to understand – they spoke to the appellant in English about his constitutional right to remain silent. The district court should not have absolutely credited their testimony.

> **b.      The District Court's Findings Regarding the Appellant's Ability to Understand English Were Based on Mistakes of Law and Fact**

In denying the appellant's motion to suppress, the district court found that the appellant had "a basic understanding of the questions that make up the Miranda warnings." (A-182.) The court opined that "[t]hese questions are not abstract or difficult to understand and they are, I believe, street knowledge." (A-

185.)  The court based its finding on the appellant's "ability to understand and carry out everyday conversations with either his daughter or his wife or girlfriend's daughter who lived in the house," and the fact that "the [appellant] has been in this country long enough to carry on conversations of this order of complexity to understand such questions in English."  (A-182; A-185.)

   Again, the district court's conclusion was clearly erroneous, and a review of the "entire evidence" makes clear that a mistake was made.  During the suppression hearing, the government played a tape of a phone call made by the appellant from prison.  (A-130-131; A-197.)  During the call, the appellant is obviously speaking to child and asks such questions as "What's up baby?"  "Where mommy?"  "Where is, where is she?  Outside, outside the house?"  (A-197.)  Defense counsel presented a witness who described her review of 30 hours of taped prison calls by the appellant.  (A-164-166) (describing 395 phone calls).  Of those calls, only eight or nine were entirely in English.  (A-166-167.)  And those discussions were similar to the one played in court – "He's usually talking to his kids, just like short conversations – hi, how are you doing, what have you been doing, how's school."  (A-167.)  The appellant's ability to have simplistic discussions with a child in no way demonstrates his ability to appreciate the complexity and import of the *Miranda* warnings.

Moreover, the length of time the appellant spent in the U.S. – a fact not established by the government during the suppression hearing – is irrelevant to the appellant's ability to understand English or the *Miranda* warnings.  In *Garibay*, the appellate court determined that the trial court "clearly erred in concluding that Garibay's English-language skills were sufficient for him to understand wand waive his constitutional rights" even though Garibay had attended a U.S. high school, taken English classes, and played high school football.  143 F.3d at 537-538.  Clearly, time spent in the U.S. and even formal education may not be used in place of a fact-specific determination that the defendant understands English.

Finally, the district court's unprompted ruling about the complexity of the *Miranda* warnings is at odds with other courts that consider *Miranda* to be both "abstract" and "difficult."  *See A.M. v. Butler*, 360 F.3d 787, 801 n.11 (7th Cir. 2004) (referring to the "inherently abstract concepts of the *Miranda* rights"); *Wroten v. Felker*, No. CV 08-04352-AG, 2009 WL 3171705, at *7 (C.D. Cal. Sept. 30, 2009) (noting that *Miranda* involves abstract concepts); *Laughman v. Pennsylvania*, Civ. A. No. 1:05-CV-1033, 2007 WL 2345295, at *3 (M.D. Pa. Aug. 16, 2007) (citing state court ruling in which *Miranda* warnings were described as difficult).

\*      \*      \*

27

The "entire evidence" in this case shows that the appellant did not waive his *Miranda* rights voluntarily, knowingly and intelligently. The appellant is a native Spanish speaker. Yet the warnings were administered entirely in English, and the printed waiver form provided to the appellant by federal agents is entirely in English. The agents neglected to provide the appellant with a waiver form in Spanish because they were unable to locate one in their office. When it suited them, they provided him with a Spanish-language form on which to write his post-arrest statement. Moreover, the evidence that the appellant understands English – simplistic conversations with children – is hardly sufficient to demonstrate that he is able to appreciate the *Miranda* warnings in English. On these facts, the district court's finding that the appellant knowingly, voluntarily and intelligently waived his *Miranda* rights is clearly erroneous. And, the district court's impromptu decision that the *Miranda* warnings are easy to understand has no basis in the law and should not be permitted to stand.

**B.**    **The Appellant's Right to Counsel Was Violated**

If a suspect asserts his right to counsel under *Miranda*, interrogation must cease, and the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Any statements

28

obtained in violation of a defendant's *Miranda* rights must be suppressed and may not be used as part of the government's case-in-chief. *See Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

In *Arizona v. Roberson*, the Supreme Court held that the bright-line *Edwards* rule – *i.e.*, that a suspect who has invoked his Fifth Amendment right to counsel may not be interrogated unless he initiates further communications with the police – applies regardless of "[w]hether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation." 486 U.S. 675, 687 (1988). A law enforcement officer who initiates an interrogation must "determine whether the suspect has previously requested counsel." *Id.*; *see also United States v. Lucas*, 963 F.2d 243, 244-247 (9th Cir. 1992) (reversing denial of defendant's motion to suppress where the defendant was interrogated by and made statements to federal agents after he had asserted his right to counsel in previous and separate interrogation by local police).

The appellant requested a lawyer while in NYPD custody on April 27, 2010. (A-833, ¶ 11.) While the two NYPD detectives who testified during the suppression hearing did not recall the appellant asking for a lawyer while in NYPD custody (A-118; A-127), the appellant also encountered a number of other NYPD officers during the time he was in custody in the 33rd precinct in Manhattan and

29

likely asked those officers for an attorney. (A-74, A-92, A-120, A-128-129, A-134.) In fact, "a lot" of the other NYPD officers appellant encountered at the 33rd precinct speak Spanish. (A-120.) However, neither Agent Payne nor Agent Carpenter, who took the appellant into federal custody, asked *any* NYPD officers whether the appellant had requested counsel. (A-93, A-141.)[6] The appellant was not provided with a lawyer at any time on April 27, 2010. (A-833, ¶ 12.) Nevertheless, the federal agents proceeded to obtain the appellant's signature on a waiver form and interrogate him at length.[7] (A-835, ¶¶ 18-24.)

The district court's finding that it was appellant's "choice to give the statement he did" was clearly erroneous. (A-185.) The district court appears to have ignored the fact that the appellant had the opportunity to interact with numerous NYPD officers at the 33rd precinct. The federal agents who sought to question the appellant were required by *Roberson*, 687 U.S. at 717, to determine whether the appellant had previously requested counsel, and they failed to do so. This failure is exacerbated by the fact that appellant may have communicated to Spanish-speaking NYPD officers during his time in NYPD custody.

---

[6] In a declaration submitted in connection with the motion to suppress, the appellant swore that he also asked the federal agents for counsel. (A-834 ¶ 17.) Agents Payne and Carpenter disputed this at the suppression hearing. (A-76, A-79; A-81-82; A-136-138.) There is no dispute, however, that they failed to ask the NYPD officers whether the appellant *already* had requested counsel.

[7] As noted above, the appellant's signature on the waiver form cannot be deemed a valid waiver of his *Miranda* rights.

30

# III.

## THE GOVERNMENT VIOLATED FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(1)(A) BY ITS FAILURE TO DISCLOSE THE APPELLANT'S ORAL STATEMENTS

The government violated Federal Rule of Criminal Procedure 16(a)(1)(A) by failing to disclose oral statements made by the appellant that Agent Payne testified to at trial. This violation resulted in substantial prejudice to the appellant. Agent Payne testified at trial that the appellant made the following oral statements in response to interrogation (italicized below):

THE COURT: What did you say and what did he say?

A. After he acknowledged his waiver of rights and signed the form, at that point, he then proceeded to ask questions as to why he was there. *And he gave reasons for where he might be there, from a mistake that was made with the issuance of the Social Security number that he had a problem with when he was trying to get his passport.*

\* \* \* \*

THE WITNESS: *He stated that there was probably -- he probably knew the reason why he was there, because of a mistake that was made in the issuance of his -- of his Social Security number.*

And at that time, that's when Agent Carpenter asked him -- after he had signed the waiver of rights, he asked him what he could get with a Social Security number. *And the defendant stated that he could get a driver's license and that he could get a job and he could ultimately get a passport.*

\* \* \* \*

31

> *He stated that he bought a set of documents that included a Social Security number.*
>
> And at that point our natural progression was, well, where did he buy it from. *And he stated -- he stated that he bought it, I believe, in Mexico.*
>
> And we also asked him how did he know the documents were real. *He stated that he thought the Social Security number belonged to a real person because he was able to get a driver's license with that Social Security number.*

(A-427-428; A-130-131 (emphases added).) The failure to disclose these statements prior to trial deprived the appellant of a reasonable opportunity to investigate the information and use it at trial. Moreover, defense counsel's trial strategy was substantially prejudiced by the nondisclosure of the appellant's oral statements.

## A.    Relevant Facts

### 1.    Discovery

After his arrest on April 27, 2010, the appellant was questioned by Agents Payne and Carpenter. (A-426-428; A-430-431; A-458.) In response to questioning, the appellant made certain oral statements to the agents and later also wrote a short statement in Spanish which was sworn to by the appellant and witnessed by the agents. (*Id.*; A-438.) On May 10, 2010, the government provided the appellant with an initial production of discovery materials pursuant to Federal Rule of Criminal Procedure 16(a), including the appellant's written post-arrest statement and a single page of handwritten notes Agent Payne took during his

32

interrogation of the appellant on April 27, 2010. Agent Payne's handwritten notes do not contain the substance of the appellant's oral statements that Agent Payne testified to at trial.[8]

### 2. Suppression Hearing

At the suppression hearing on September 28, 2010, Agent Payne testified via videoconference (over the appellant's objection) from Karachi, Pakistan. (A-73; A-86.) On direct examination, Agent Payne testified that after arrest and during interrogation, the appellant made numerous oral statements in response to questions concerning his family background and the history of Puerto Rico. (A-77-78.) None of the statements had been previously disclosed to the appellant by the prosecutor. On cross-examination, Agent Payne testified that he had memorialized the appellant's oral statements in a case report he had prepared. (A-89-90.) That case report, however, had not been produced to the appellant

---

[8]  The entirety of Agent Payne's notes is as follows:

- WANTED TO TRAVEL TO PR THEN TO SD
- SANTO DOMINGO

CAME TO US IN 1986, 10-12 YRS OLD

1999 – paid $500 – knew it was a real number

JOSELITO VAZQUEZ GOMEZ
      7/25/1975
- got the ID
- DR – Santo Domingo
- through Mexico in 1998
- in N.Y., 1999
- I sold drugs

(A-797.)

33

before the suppression hearing either in discovery or as 3500 material. Indeed,

Agent Payne's typewritten case report was produced by the prosecutor to defense

counsel only after the conclusion of his testimony. (A-100-101; A-198-201.)

While the four-page typewritten case report summarizes numerous oral statements

made by the appellant during the April 27, 2010 interrogation,[9] it does not disclose

the substance of the extensive statements about which Agent Payne testified at

trial. (A-427-28; A-430-431; A-441-449.)

In reaction to the tardy disclosure of Agent Payne's typewritten report

at the suppression hearing and in order to prepare its trial strategy, defense counsel

requested in writing that the prosecutor make immediate disclosure of any

additional oral statements made by the appellant in response to interrogation after

his arrest that the government intends to offer at trial. (A-799.) By letter dated

October 4, 2010 (which was less than 10 days before trial), the prosecutor

---

[9] Agent Payne's typed case report discloses that the appellant made only the following oral statements in response to interrogation:

> During the interview, the SUBJECT stated he was Erick Diaz born in Puerto Rico on 6/06/1976 and traveled to the U.S. permanently when he was 12 years old. SUBJECT stated he did not know the whereabouts of his mother and father and that he did not have any brothers or sisters. SUBJECT stated that his Social Security number had been changed in 2007 before he applied for the passport. SUBJECT stated he applied for the passport in order to travel to Puerto Rico and then onto the Dominican Republic. SUBJECT was not able to answer basic questions pertaining to Puerto Rico. SUBJECT eventually admitted he was an imposter to the DS-11 he executed in 2008 and that he was not a U.S. citizen. SUBJECT then wrote a written statement in Spanish.

(A-200.)

responded by specifically identifying the appellant's oral statements it intended to

rely on at trial.  (A-799-800.)  The prosecutor represented, in pertinent part, that in

addition to the oral statements previously disclosed in discovery and at the

suppression hearing:

> ***the only statements that the Government would
> additionally seek to introduce at trial are***:  . . . the
> following statements made on April 27, 2010, to Special
> Agent Carpenter (produced on September 26, 2010, as
> "3505-2"):  that the defendant paid $500 in 1999 for the
> identity; that based on the defendant's conversations with
> the seller the defendant believed the identity was the
> identity of a real person; and that the defendant knew it
> was a real Social Security number.

(A-799-800 (emphasis added).)

### 3.  **Trial**

On October 13, 2010 Agent Payne was called by the government as a

witness in its case-in-chief.  After Agent Payne testified extensively about

previously undisclosed oral statements that the appellant made in response to

interrogation, defense counsel asked for a sidebar, objected to the admission of the

statements because they had not been provided in discovery, and sought to exclude

the statements based on fundamental unfairness.  (A-432-434.)  In response, the

prosecutor initially stated that he also was previously unaware of the statements,

but then maintained that the substance of the oral statements had been previously

disclosed to the defense via Agent Payne's handwritten notes which defense

35

counsel had for five months.  (A-434.)  After the district court reviewed the notes,

it determined that Agent Payne's trial testimony regarding the appellant's oral

statements went beyond the scope of the agent's notes and his testimony at the

suppression hearing, but ruled that the government's failure to make previous

disclosure of the statements was not fundamentally unfair to the appellant.  (A-434;

A-436-437.)  Following the conclusion of the government's presentation that day,

the district court heard additional argument and reaffirmed its previous ruling.  (A-

487-492.)

### 4. Post-Trial Motion

After the jury's verdict, the appellant moved for a new trial pursuant

to Rule 33 based on the grounds that the government had violated Rule 16 by

failing to produce the substance of appellant's oral statements.  The district court

denied that motion reasoning that the undisclosed statements were not so far

outside the scope of what had been previously disclosed by the government to

require striking them at trial, the prosecutor was not at fault for failing to disclose

the statements, and there was no unfairness of the appellant.  (SPA-11-12.)

### B. Applicable Law

Federal Rule of Criminal Procedure 16(a)(1)(A) provides as follows:

> **(A) Defendant's Oral Statement.**  Upon a defendant's
> request, the government must disclose to the defendant
> the substance of any relevant oral statement made by the
> defendant, before or after arrest, in response to

> interrogation by a person the defendant knew was a
> government agent if the government intends to use the
> statement at trial.

As the Second Circuit recognized, "[c]ommon sense and judicial experience teach that a defendant's prior statement in the possession of the government may be the single most crucial factor in the defendant's preparation for trial." *United States v. Percevault*, 490 F.2d 126, 129-30 (2d Cir. 1974). Thus:

> the 1975 amendment of Rule 16 to permit pretrial
> discovery of oral statements . . . reflects the drafters'
> studied conclusion that pretrial discovery of oral
> statements serves significantly to protect the defendant's
> right to a fair trial [because] [p]retrial discovery prevents
> the defendant from being unfairly surprised with his
> statements at trial and enhances the ability of defense
> counsel to suppress inadmissible statements.

*United States v. McElroy*, 697 F.2d 459, 463 (2d Cir. 1982) (footnote omitted).

Moreover, the Second Circuit has explained that defense counsel's ability to communicate with his or her client does not excuse inadequate disclosure under Rule 16:

> [T]he availability of particular statements through the
> defendant himself does not negate the government's duty
> to disclose statements subject to Rule 16. Defense
> counsel is entitled to plan his trial strategy on the basis of
> full disclosure by the government regardless of the
> defendant's knowledge or memory of the disclosed
> statements. . . .
>
> . . . The defendant in a criminal case often mistrusts his
> counsel who, in most instances, has been assigned and
> not chosen, or believes that his counsel will best defend
> him if he is kept ignorant of the facts. Even a defendant

> who cooperates with his counsel cannot always
> remember all of the relevant facts, or realize the
> importance to his defense of seemingly inconsequential
> police actions. Defense lawyers, as a result, often learn
> much more about what has happened from government
> discovery, formal and informal, than they do from their
> clients. This fact surely is one of the reasons behind the
> adoption of Rule 16 and other rules which have greatly
> broadened discovery in criminal cases.

*Id.* at 465 (emphasis added).

The prosecutor's violation of its Rule 16 disclosure obligations should result in a new trial if it causes "substantial prejudice" to the defendant. *United States v. Thomas*, 239 F.3d 163, 167 (2d Cir. 2001). To establish substantial prejudice, "the defendant must demonstrate that the untimely disclosure of the statement adversely affected some aspect of his trial strategy." *United States v. Adeniji*, 31 F.3d 58, 64 (2d Cir. 1994). "This assessment requires consideration of 'the nature of the evidence sought, the extent to which it bore on critical issues in the case, the reason for its nonproduction, and the strength of the government's untainted proof' as well as the timing of production." *Thomas*, 239 F.3d at 167 (quoting *United States v. Petito*, 671 F.2d 68, 74 (2d Cir. 1982)).

**C.** **The Government's Failure To Disclose Appellant's Statements Caused Substantial Prejudice**

Because Rule 16(a)(1)(A) clearly applies to the appellant's undisclosed oral statements,[10] the question is whether the government's violations of Rule 16(a)(1)(A) caused the appellant "substantial prejudice." The resolution of this question requires consideration of: (1) the nature of the defendant's undisclosed oral statements, (2) the extent to which they bore on critical issues in the case, (3) the government's reasons for its failure to produce the substance of the defendant's oral statements, (4) the strength of the government's untainted proof, and (5) the timing of the government's production. *See generally Thomas*, 239 F.3d at 167.

The first and second factors – the nature of the evidence and its significance to case strategy – strongly support a finding of substantial prejudice. *First*, the undisclosed statement that a "mistake" had been made in the issuance of appellant's Social Security number provides the basis for a potential defense of reasonable mistake – *i.e.*, that the appellant reasonably believed the Social Security card issued to him was legitimate, thus negating the *mens rea* elements of Counts One, Two and Four – which could have been investigated and presented at trial if

---

[10] As noted above, the appellant requested disclosure of the substance of his oral statements in writing pursuant to Rule 16(a)(1)(A). The questioning of the appellant by Agents Payne and Carpenter occurred after the appellant's arrest at a time when the appellant knew that Agents Payne and Carpenter were government agents, and, in light of the government's burden of proof, it cannot be disputed that the government intended to use the appellant's undisclosed oral statements at trial.

39

the government had complied with its Rule 16 obligations in a timely manner. *See generally United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004) (reversing for new trial where government failed to disclose evidence that, while not entirely exculpatory, would have helped defense's case and weakened government's case). Although defense counsel cross-examined an employee of the Social Security Administration (the "SSA") who testified after Agent Payne regarding "mistakes" in the SSA's record keeping (A-547) (testimony of Anthony Patlaba), such cross-examination was not an adequate substitute for a pre-trial investigation, nor was it a sufficient basis upon which to base a defense of good faith "mistake."

*Second*, the appellant's statement regarding a mistake in the issuance of his Social Security number also would have served as the basis for different strategies in defense counsel's cross-examinations of the government's witnesses who testified prior to Agent Payne, including Diana Claudio and Erick Ignacio Diaz Vazquez (whom she chose not to question at all).

*Third*, the appellant's statement about the mistake could have served as the basis for expert testimony regarding "mistakes" at the SSA. Such testimony, and associated expert discovery, could have assisted defense counsel in evaluating whether her client's trial testimony as to the circumstances of the "mistake" would have been effective.

2649267.2

*Fourth*, the untimely disclosure of appellant's oral statement that he had purchased the documents in Mexico was clearly prejudicial because it directly contradicted the government's theory of the case – *i.e.*, that the identity thefts occurred in 2007 and 2008, contemporaneously with the submission of the Learner's Permit Application and the Passport application.[11]

*Fifth*, timely disclosure of the appellant's statements that he believed he could obtain employment, a driver license and a passport with a real Social Security number would have allowed defense counsel to investigate whether such identity documents issue only on the basis of verified Social Security numbers. Any exceptions found could have been presented at trial as evidence refuting the claim that the appellant knew the Social Security number at issue in Count Four belonged to a real person. Given the weakness of the prosecution's other evidence on this point, the prejudice to the appellant's trial strategy is clear.

---

[11] The government provided the following summary of the case in its opening statement, suggesting that the identity thefts had occurred contemporaneously with the learner permit and passport applications in 2007 and 2008, respectively:

> AUSA COHEN: This is a case about a man who used stolen identities to hide who he really is. *This man, the defendant, stole another person's identity in 2007* and applied for a New York State learner's permit from the New York State Department of Motor Vehicles. *Then again in the following year this man stole another victim's identity* and applied for a United States passport application.

(A-328 (emphases added).)

41

With respect to the fourth *Thomas* factor[12] – the strength of the government's untainted proof – the oral statements of the appellant that the government failed to disclose were the most probative evidence at trial, especially on the issue of whether the appellant knew that the means of identification at issue belonged to a real person. Moreover, the undisclosed statement that "he thought the Social Security number belonged to a real person because he was able to get a driver's license with that Social Security number" (A-214) is a direct admission by the appellant himself on that central point. Indeed, it is difficult to imagine evidence more important to the case than appellant's own words.

With respect to the fifth *Thomas* factor – the timing of the government's production – substantial prejudice is obvious. The statements were disclosed by a government witness on the stand in front of the jury. The resulting impact on the appellant's trial strategy was devastating, as the appellant was deprived of the ability to investigate and develop evidence and arguments regarding: (1) the procedures used by the New York DMV and the State Department to verify identification information before issuing documents; (2) the purported mistake in the issuance of the appellant's Social Security card; and

---

[12] The third *Thomas* factor – the government's reasons for its failure to produce the substance of the appellant's oral statements – barely warrants discussion. First, the prosecutor admitted that he had "never heard of some of these statement[s]." (A-432.) Then, he insisted that the substance of the statements had been produced. (A-434.) The district court disagreed entirely. (A-436.)

(3) the circumstances surrounding the identity thefts the government claims occurred in 2007 and 2008, but which Agent Payne's testimony suggests happened much earlier.

In light of the significance of the appellant's oral statements that the government failed to disclose and the timing of their ultimate disclosure at trial, it is clear that the government's violations of Rule 16(a)(1)(A) caused "substantial prejudice" to the appellant. *See generally Thomas*, 239 F.3d at 167; *United States v. Alvarez*, 987 F.2d 77, 84-86 (1st Cir. 1993) (reversing one defendant's drug convictions where government violated Rule 16(a)(1)(A) by failing to disclose the defendant's admission of ownership of an object containing drugs before a customs inspector testified to that admission at trial); *United States v. Ible*, 630 F.2d 389, 396-97 (5th Cir. 1980) (reversing the defendant's conviction of unlawful possession of counterfeit currency where the arresting agent testified that the defendant admitted knowing the currency at issue was counterfeit – an admission that went beyond the defendant's written statement and which the government failed to produce in discovery, in violation of Rule 16(a)(1)(A)).

## IV.

## THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED IDENTITY THEFT

Under *Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886, 1894 (2009), the aggravated identity theft charge in Count Four required the

43

government to prove beyond a reasonable doubt that the appellant knew on September 15, 2008, that the means of identification used to apply for a United States passport belonged to a real person – Erick *Ignacio* Diaz Vazquez.[13]  The government's proof at trial was insufficient with respect to this element.  None of the evidence the government relied on showed that the appellant knew that Erick *Ignacio* Diaz Vazquez was a real person or that Social Security number XXX-XX-8343 assigned to him was authentic.

The appellant preserved the sufficiency of the evidence argument for appeal by moving for a judgment of acquittal on all counts under FED. R. CRIM. P. 29(a) at the close of all the evidence.  (A-564.)  *See generally United States v. Allen*, 127 F.3d 260, 264 (2d Cir. 1997).  The district court reserved decision on the motion (A-564), and denied it after the jury returned a verdict of guilty on all counts.  (A-685.)

---

[13] The government maintained at trial that there were two alleged victims with the same first name and same surnames but with different middle names.  According to the government, the appellant supposedly used a social security number XXX-XX-1077 belonging to the first victim – Eric *Francisco* Diaz Vazquez – in an application for a New York State Learner Permit in October 2007.  (A-733-734.)  This conduct was charged in Count Three only.  (A-215.)  In addition, the government alleged that the appellant used Social Security number XXX-XX-8343 and other means of identification belonging to the second victim Erick *Ignacio* Diaz Vazquez in connection with an application for a U.S. passport in September 2008.  (A-688-699.)  This conduct formed the basis for the aggravated identity theft charged in Count Four.  (A-216.)  Therefore, the government had the burden of proving beyond a reasonable doubt that the appellant knew that Erick *Ignacio* Diaz Vazquez was a real person at the time he supposedly submitted the passport application in September 2008.

## A.    Standard of Review

This Court's review of a district court's denial of a Rule 29 motion is *de novo*.  *See United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).  A defendant challenging the sufficiency of the evidence bears a heavy burden because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict.  *See United Sates v. DeSena*, 287 F.3d 170, 176-177 (2d Cir. 2002).  This Court must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).  While circumstantial evidence may support a conviction, the conviction cannot "rest on mere speculation or conjecture."  *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996).  And, where "a fact to be proved is also an element of the offense," then "it is not enough that the inferences in the government's favor are permissible," but rather, the reviewing court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element . . . is established beyond a reasonable doubt."  *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995).

## B.    Discussion

The prosecution introduced only a few highly ambiguous snippets of evidence to show that the appellant knew that the means of identification submitted

45

with his September 2008 passport application belonged to a real person (*i.e.*, Erick *Ignacio* Diaz Vazquez). These were: (1) the testimony of Agents Payne and Carpenter that was equivocal and contradictory; (2) the last line of appellant's post-arrest written statement where he supposedly apologized to someone called "Erick Diaz"; (3) the application and billing statements for an Old Navy credit card; and (4) the mere use of the information on a birth certificate and Social Security card in the name of Erick *Ignacio* Diaz Vazquez submitted with the September 2008 passport applications. (A-603-605.) As discussed below, this evidence is flatly insufficient to support a finding that the appellant knew beyond a reasonable doubt that the means of identification he supposedly used in the September 15, 2008 passport application belonged to a real person.

### 1. The Agents' Testimony

The prosecution relied heavily on the testimony of Agents Payne and Carpenter to show that the appellant knew that the identity he used in the passport application was real. But Agent Payne's testimony actually contradicted the government's theory, and Agent Carpenter's testimony was unreliable and inconclusive.

Specifically, Agent Payne testified that during post-arrest questioning the appellant stated that he had bought a set of documents in Mexico and that the appellant thought the "Social Security number belonged to a real person because

46

he was able to get a driver's license with that Social Security number." (A-430-431.) This testimony clearly refers to social security number XXX-XX-1077 which is assigned to Eric *Francisco* Diaz Vazquez[14] (a different person from Erick *Ignacio* Diaz Vazquez) and is not charged in Count Four. (A-216.) Significantly, the fact that the appellant might have believed that Eric *Francisco* Diaz Vazquez was a real person is clearly not probative as to whether he thought that Erick *Ignacio* Diaz Vazquez was a real person. And, the fact that appellant might have used social security number XXX-XX-1077 to obtain a New York State Learner Permit and Driver License is not probative of whether the appellant also knew that a *different* Social Security number used by him in the passport application was authentic. Thus, Agent Payne's testimony regarding the documents obtained in Mexico is not probative as to whether the appellant knew that Erick *Ignacio* Diaz Vazquez was a real person or that XXX-XX-8343 was an authentic Social Security number.

Seeking to fill the gap in its evidence, the government relied on Agent Carpenter's testimony that appellant stated during post-arrest questioning that "he had purchased the documents from a vendor for approximately $500 . . . and that during the course of purchasing it, because of the amount of money, he had asked questions to the vendor to try to ascertain if the identifying documents would be

---

[14] The Learner Permit application contains the name Erick *Francisco* Diaz and the Social Security number XXX-XX-1077. (A-733.)

valid in the United States." (A-465-466.) Importantly, this testimony was directly

contradicted by the agent's testimony at the suppression hearing that "[appellant]

said he *had thought* about asking questions to prove that it was valid." (A-147.)

In any event, neither statement establishes that the appellant obtained an answer

from the vendor and, therefore, knew anything about the authenticity of the

documents. In fact, the substance of both statements shows that, at most, the

appellant "ha[d] an incentive" to purchase valid information, "not that [he] knew

whether [he] actually purchased one" which is insufficient as a matter of law.

*United States v. Gaspar*, 344 Fed. Appx. 541, 546 (11th Cir. 2009). Nor does the

statement make clear the type of documents the appellant supposedly purchased for

$500. Thus, Agent Carpenter's unreliable and inconclusive testimony is too

slender a reed to support appellant's conviction on Count Four.

### 2. The Post-Arrest Written Statement

The prosecution also relied upon the appellant's post-arrest written

statement by arguing that it contained an apology. (A-603; A-737-741.) However,

the appellant's post-arrest written statement is not competent evidence on this point

because it was made on April 27, 2010, approximately 18 months *after* the

passport application was submitted. It is illogical to conclude that appellant's

knowledge on April 27, 2010, was the same as on September 15, 2008. Indeed, a

recent decision applying the *Flores-Figueroa* standard recognizes the limited

48

evidentiary value of a defendant's admissions after the crime to establish knowledge at the time of the crime. *See United States v. Morgan*, Crim. A. No. 2:06-cr-0164; 2010 WL 1714705, at *12-13 (E.D. Pa. Apr. 27, 2010). Finding that the government had not met its burden of proof on the element of knowledge for aggravated identity theft, the district court held that a defendant's admission at his guilty plea that he had used an "authentic" driver license was not sufficient to show that at the time of the crime the defendant knew those facts. *See id.*

Moreover, even if the appellant's written statement in April 2010 could be considered as evidence of his state of mind 18 months before, the government's interpretation of the last line of the statement as an apology is disingenuous. There is no mention in the statement of a passport application, Learner Permit, or Social Security number. There was absolutely no testimony by the agents (or by anyone else) that the appellant apologized to either victim after his arrest. Indeed, the last line of the written statement is not a model of clarity for many reasons, including the ambiguous use of the name "Erick Diaz," and may not be an "apology" at all.[15] Accordingly, the prosecutor's attempt to stretch the written statement to include an apology to one of the victims inappropriately called

---

[15] Given that both victims' names are some form of "Erick Diaz," the statement is utterly ambiguous. Moreover, had the appellant intended to apologize *to* someone, he would have written the word "a" in Spanish – which means "to" – before "Erick Diaz" so that the sentence would have read "I sincerely ask forgiveness if I have done harm/hurt any person with this I did *to* Erick Diaz." (A-737-741.) As the statement stands, the "Erick Diaz" may very well be the appellant's signature on the first page of his statement as he explained in his sworn declaration. (A-836, ¶ 25.)

49

2649267.2

for the jury to speculate and guess as to its meaning. Regardless of whatever ambiguity may appear in the statement based on the cold record, it was patently unfair for the prosecutor to characterize it as an apology.

### 3. Old Navy Application and Statements

The application and billing statements for the Old Navy credit card submitted into evidence by the prosecution (A-760-84) also are not evidence that the appellant knew on September 15, 2008 that the means of identification belonged to a real person. The government presented no evidence that GE Capital, the entity that issued the Old Navy credit card, verifies the information provided by applicants, or even if such verification did occur, that the appellant *knew* about the verification. In the absence of such evidence, it cannot be assumed that GE Capital's approval of the Old Navy credit card application means the information provided by the appellant was verified by GE Capital and found to be correct. Thus, the issuance and use of the Old Navy credit card cannot be considered proof that the appellant knew the date of birth and Social Security number provided with the application belonged to a real person.

In a similar case where a defendant was charged with using another person's identifying information to apply for a U.S. passport, the Court of Appeals for the Eleventh Circuit specifically held that such an inference is improper. *See Gaspar*, 344 Fed. Appx. at 546. Despite the fact that the *Gaspar* defendant

50

admitted to having obtained and presented a state identification card and driver license in the same name as her fraudulent passport application, the court determined that an inference of knowledge was not appropriate. *See id.* The *Gaspar* court found that the inference is refuted by the very fact scenario presented to the Supreme Court in *Flores-Figueroa* "where the defendant remained employed for six years using a Social Security number and counterfeit alien registration card that did not belong to a real person." *Id.* "As [*Flores-Figueroa*] demonstrates, an individual can successfully use documents that do not belong to a real person in order to secure benefits such as employment, *even though employers also presumably run background checks*." *Id.* (emphasis added). If, as in *Flores-Figueroa*, one can obtain employment using identifying information for a non-existent individual, it is illogical to conclude one could not also obtain a credit card using similar information since both types of entities likely conduct similar – if any – verifications.

In addition, the *Gaspar* court explicitly held that, even if a defendant's intent to use actual information could validly be inferred simply from his or her applying for a passport, "at most it proves that [defendant] might have an incentive to buy an authentic birth certificate, not that she *knew* whether she actually purchased one." *Id.* By relying on the Old Navy evidence, the government here, like the prosecution against *Gaspar*, also is asking the Court to make a rule that

51

"knowingly" under 18 U.S.C. § 1028A(a)(1)(c) actually means that the appellant knew or *should have known* that the means if identification belonged to a real person. This interpretation of the statute is simply incorrect.

Finally, the government's reliance on the Old Navy evidence runs afoul of the trial court's instruction to the jury that it could only give limited consideration to this evidence pursuant to Rule 404(b). In fact, the district court instructed the jury that the Old Navy evidence could not be considered as proof that the appellant committed Count Four. Specifically, the district court charged the jury that the Old Navy evidence is:

> . . . not proof and cannot be considered by you as proof that the defendant committed the crimes charged in Counts One, Two and Four. What you may consider them is as follows: First, the issue of the identity of a person or persons making the several applications for a passport or credit card; second, whether or not the issues in the case – in our case on Counts One, Two and Four – are due to mistakes or accident or intentional and willful; third, whether or not there was some plan or intent or motive to perform the acts charged. There is some attitude of mind that is a relevant aspect of proof.

(A-663.) Thus, the prosecutor's reliance on the Old Navy evidence was improper, and it should be excluded from this Court's evaluation of the evidence as to Count Four.

4. **Birth Certificate and Social Security Number**

The Court must reject the government's meritless argument that the mere use on the passport application of information from the Erick *Ignacio* Diaz Vazquez birth certificate and Social Security card proves that the appellant knew that the information belonged to a real person. (A-605 ("You don't just guess correctly a four-part name and you don't just invent a date of birth and a Social Security number that goes with that name.").)

Like other courts confronted with the government's argument, this Court should hold that mere use of identifying information belonging to a real person, without more, is insufficient to prove that the appellant knew the information belonged to a real person. *See United States v. Grajeda-Gutierrez*, 372 Fed. Appx. 890, 891-93 (10th Cir. 2010) (reversing defendant's conviction under 18 U.S.C. § 1028A where defendant's use of the Social Security number and date of birth for employment was insufficient to show that she knew that the identifying information belonged to a real person); *United States v. De La Rosa*, 346 Fed. Appx. 468, 471 n.2 (11th Cir. 2009) (finding that defendant's use of real birth certificate to apply for passport was insufficient to show defendant's knowledge that the certificate belonged to a real person, as the facts presented fell within the category of cases described in *Flores-Figueroa* where the "defendant

did not care whether the papers (1) were real papers belonging to another person or (2) were simply counterfeit papers") (citing *Flores-Figueroa*, 129 S. Ct. at 1893).

For the reasons set forth above, the Court should vacate the judgment of conviction and order a new trial on Count Four.[16]

## V.

## NUMEROUS OTHER ERRORS DENIED APPELLANT A FAIR TRAIL

Several other errors at the trial denied appellant a fair trial, including:

• Admitting certain recorded prison calls into evidence where the government refused to represent that the prison calls contained no exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963) even though the Government has such an obligation under *United States v. Salyer*, Cr. No. S-10-0061, 2010 WL 3036444, at *5 (E.D. Cal. Aug. 2, 2010); and

• Admitting the Old Navy evidence pursuant to Rule 404(b) on the issues of identity, intent, absence of mistake, and the existence of a plan. The Old Navy evidence was not sufficiently similar to the fraudulent passport

---

[16] Post-trial, the appellant moved for a new trial pursuant to Rule 33 maintaining, among other things, that the jury's verdict as to Count Four was against the weight of the evidence. The district court denied that motion in an opinion dated March 7, 2011. For the reasons discussed above, the district court's decision was an abuse of discretion. Principally, the district court abused its discretion by relying on the testimony of Agent's Payne and Carpenter, the appellant's post-arrest statement, the Old Navy evidence (which should not have been considered as proof on Count Four), and the New York State Driver License (which, according to the government's proof at trial, was obtained by using means of identification belonging to Eric *Francisco* Diaz Vazquez not Erick *Ignacio* Diaz Vazquez).

application charged in this case. *See United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999).

## CONCLUSION

For the foregoing reasons, appellant respectfully requests this Court to vacate his judgment of conviction and remand his case for a new trial, or in the alternative, so that he may plead guilty to the sole count in the original Indictment.

Dated: New York, New York
      January 3, 2012

                Respectfully Submitted,

                FRIEDMAN KAPLAN SEILER &
                  ADELMAN LLP

                Mary E. Mulligan
                Jessica A. Murzyn
                7 Times Square
                New York, New York 10036-5616
                (212) 833-1100

                *Attorneys for Appellant-Defendant*

55

2649267.2

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). According to the word count feature of the word processor on which this brief was prepared, the brief contains 13,171 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font.

Dated: New York, New York
        January 3, 2012

                    Respectfully Submitted,

                    FRIEDMAN KAPLAN SEILER &
                       ADELMAN LLP

                    Mary E. Mulligan
                    Jessica A. Murzyn
                    7 Times Square
                    New York, New York 10036-5616
                    (212) 833-1100

                    *Attorneys for Appellant-Defendant*

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Order Denying Motion for New Trial filed on March 7, 2011
    (Dkt. No. 51) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

Judgment in a Criminal Case filed on September 22, 2011
    (Dkt. No. 56) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-17

**SPA-1**

USC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

UNITED STATES                                    :

                                                 :        **ORDER DENYING MOTION**
        -against-                                :        **FOR NEW TRIAL**

                                                 :
JOSELITO VASQUEZ GOMEZ,                           :        10 Cr. 397 (AKH)

                                                 :
                        Defendant.                :

-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant Joselito Vasquez Gomez moves under Federal Rule of Criminal

Procedure 33 for a new trial.  Defendant argues that (i) the Government failed under Federal

Rule 16(a)(1)(A) to disclose the full substance of statements he made to interrogating agents

subsequently used against him at trial; (ii) the Government introduced certain evidence in

violation of Federal Rule of Evidence 404(b); (iii) the Government made improper remarks to

the jury in summation; and (iv) the jury's verdict on Count 4, charging him with aggravated

identity theft, is against the weight of the evidence under <u>Flores-Figueroa v. United States</u>, 129

S. Ct. 1886 (2009).  For the reasons that follow, the motion is denied.

        **I.      Facts**

        **a.       Trial and Conviction**

        Beginning October 12, 2010, the Court held a four-day trial on four counts

brought by the Government in a second superseding indictment.  The second superseding

indictment charged Defendant with (1) making false statements on a passport application, on

September 15, 2008, in violation of 18 U.S.C. § 1542; (2) using a Social Security number

assigned to another person to apply for a passport, on September 15 and 29, 2008, in violation of

18 U.S.C. § 408(a)(7)(B); (3) using a social security number assigned to another person to apply

for a New York State learner's permit, on October 16, 2007, in violation of 18 U.S.C.

1

§ 408(a)(7)(B); and (4) aggravated identity theft in connection with the crimes charged in counts 1 and 2, in violation of 18 U.S.C. § 1028A.

At the trial, the Government produced Defendant's application, and his follow-up application dated September 29, 2008, which both bore Defendant's picture, the name "Erick D.,"[1] and pedigree information such as a birthdate, place of birth, place of parents' birth, and a Social Security number. The Government also produced the documents supplied by Defendant in support of his application: these included photocopies of a birth certificate, a Social Security card issued March 12, 2008, and a New York State driver's license issued December 19, 2007, all bearing the same name, "Erick D." As to the Social Security card, the Government also produced an application for a new card that was granted on March 12, 2008, which was filled out by "Erick D."

The Government also produced Defendant's learner's permit application, dated October 16, 2007. The learner's permit application bore the same Social Security number as the passport applications, and it also bore the same unique, New York State DMV "Client ID Number" as Defendant's driver's license, which was found on Defendant when he was arrested. All four of these items of identification clearly bore photographs of Defendant.

The Government also introduced an Old Navy credit card issued to Defendant on August 4, 2008, again in the name, "Erick D." The account records showed that Defendant had used the same Social Security number that he had used to apply for a learner's permit and for a passport.

Additional documentary evidence showed that the Social Security number used by Defendant had actually been issued to an individual named Eric D., who was born in Puerto

---

[1] For the sake of preserving the privacy of the individual who rightfully possessed the Social Security number and identification information, the Court will not use the relevant surname. From the record, it is apparent that Defendant used Eric D.'s full name, which comprises four names and surnames, and his everyday name.

2

Rico in 1977.  Since it was first issued, fourteen applications had been made with the Social

Security Administration for cards bearing Eric D.'s Social Security number, with the most recent

application made on March 12, 2008.

        The Government also introduced incriminating statements made by Defendant.

First, the Government introduced a stipulated English translation of Defendant's written

confession.  It states:

> I, Joselito Vasquez Gomez, was born in Santo Domingo on July
> 25, 1975.  I came here to this country via Mexico in 1999.  I got
> these papers for 500 dollars.  I did it because I wanted to work to
> support myself and give to my girlfriend and her son. . . .  I hope
> you have consideration for me and if you can send me to my
> country as soon as possible I would appreciate it.  I can pay for my
> fare.  I sincerely ask forgiveness if I have done harm/hurt any
> person with this I did Erick Diaz.

Gov. Ex. 6T.  These were supplemented by stipulated translations of phone calls made by

Defendant while held in prison, during which he made clear that he had falsified information on

his passport applications.  In particular, Defendant stated that he had not named his own parents

on the applications.

        Numerous witnesses testified at the trial.  Department of State agents who

questioned Defendant testified that he told them he had purchased the Social Security number

and the other identification information in order to obtain a job, a driver's license, and a passport

in the United States.  Eric D. testified that the Social Security number and the pedigree

information used by Defendant on his passport applications pertained to him; he was able to

identify the pedigree information that Defendant had supplied incorrectly or left blank on the

passport applications.  An agent for the Social Security Administration testified that multiple

applications on the same social security number were evidence of a fraud of some kind.  A

representative of the Old Navy credit card issuer testified that account records showed that

3

Defendant had provided his home address in the Bronx for billing records, but had supplied Eric

D.'s Social Security number.  Finally, Postal Service Agents testified that they observed

Defendant fill out his passport applications and administered an oath to him prior to his signing

them.

On October 18, 2010, the jury delivered a verdict of guilty on all counts.

Defendant now moves under Federal Rule 33 for a new trial, arguing that aspects of the trial

described below denied him a fair proceeding.

### b.      Testimony of Department of State Agents

Defendant was initially arrested by the New York Police Department, who

transferred him to the custody of the Department of State for processing and interrogation.

Department of State Agent Charles Payne was the principal interrogator.  Days after the

interrogation of Defendant, he was reassigned to a duty station in Karachi, Pakistan.

Agent Payne took contemporaneous notes while interrogating Defendant.  In

relevant part, those notes said:

> During post-Miranda questioning said he paid $500 in 1999 for the
> identity.  He knew it was real.  Based on his conversations with
> seller, Δ believed identity was the identity of a real person.  Δ
> knew it was a real social security number.  Δ planned to use it for
> employment.

Government Exhibit 3501-12.  Agent Payne incorporated his notes into a typewritten report that

he prepared after the interrogation.  Consistent with its obligation under Federal Rule of Criminal

Procedure 16(a)(1)(A), the Government disclosed these notes and report to Defendant prior to

trial.  Agent Payne thereafter returned from Pakistan on the eve of trial to testify as a

Government witness.  The Government had not intended to call Agent Payne as a witness

because he was stationed in Pakistan and could not easily return to the United States, but at
Defense Counsel's urging, the Court ordered the Government to produce him.

In response to a question by the Government about the interrogation of
Defendant, Agent Payne testified that Defendant stated he thought he had been arrested "from a
mistake that was made with the issuance of the Social Security number that he had a problem
with when he was trying to get his passport." Transcript of Oral Argument at 210-11, United
States v. Diaz Vasquez (S.D.N.Y. 2010) (10 Cr. 397). Additionally, Agent Payne testified,
Defendant had admitted to purchasing a set of documents in Mexico, which he believed were
real because he would be able to use them to get a driver's license, a job, and a passport.
Defense Counsel objected and moved to strike the testimony.

Defense Counsel argued that the introduction of Agent Payne's statements
presented a fundamental unfairness because the Government had not disclosed the substance of
his comments, as required Federal Rule 16(a)(1)(A). Defense Counsel represented that her
opening statement to the jury included the point that the agents' statements showed that at the
time of interrogation, Defendant made no mention of "the words passport application, Social
Security number, birth certificate or driver's license." Transcript of Oral Argument at 117. In
response, the Government contended that Agent Payne's in-court statements did not go beyond
the substance of the notes it had disclosed, but also noted that the Government had not heard
these statements from Agent Payne before he testified. The Government represented that
because Agent Payne had been in Pakistan during the pretrial period and had only just flown in
to testify, it had had access to him only for a bit of the Saturday preceding trial.

I held, as trial judge, that the statements went beyond the Government's
disclosures, but not so far as to constitute a material unfairness to the Defendant. Accordingly, I

denied the motion to strike the challenged trial testimony, and invited Defense Counsel to raise

the issue again if she wanted to cure any unfairness; if she did, I promised to "figure out a way to

give you an opportunity to cure." Transcript of Oral Argument at 220. Defense Counsel then

cross-examined Agent Payne, and brought out the fact, as impeaching evidence, that nothing in

Agent Payne's contemporaneous interrogation notes or his official report said anything about

Defendant believing he was in trouble because he had used a Social Security number to obtain a

passport, or about believing his purchased information to be real because he could get a job, a

driver's license, and a passport with it.

At the close of the trial day, Defense Counsel renewed her objection to the

Government's failure to disclose Agent Payne's testimony. I affirmed my ruling that the

evidence was not to be struck, but again repeated that Defense Counsel could review her opening

statement and "bring to my attention any unhappiness you have with regard to this particular

issue and we can then review that and see if there is something more that we can do." Transcript

of Oral Argument at 275. Defense Counsel did not raise the issue again, but in her summation,

she emphasized the seeming inconsistency that nothing in Agent Payne's contemporaneous notes

or report supported key aspects of his trial testimony.[2]

I instructed the jury that they were the ones to determine credibility, that they had

discretion to credit or not credit any witness, and that they could consider if the witness's

"relationship with the government" could have caused a bias, and if any other "incentive, loyalty,

or motive . . . might cause that witness to shade the truth." Transcript of Oral Argument at 441.

     **c. Admission of the Old Navy Credit Card**

---

[2] Agent Payne was assisted by Agent Michael Carpenter, who testified at trial that Defendant had made inquires to the vendor of the identity and Social Security information whether the information he provided was authentic. In a fashion similar to her impeachment of Agent Payne, Defense Counsel elicited that Agent Carpenter's testimony was not consistent with his testimony at the evidentiary hearing.

At the pretrial hearing on Defendant's motions to suppress, Defense Counsel sought to preclude the Government from making any reference to Defendant's Old Navy credit card or credit card account information. The Government argued that the credit card was admissible under Federal Rule of Evidence 404(b) to demonstrate the lack of mistake and the intent of Defendant to use Eric D.'s Social Security number and identification information. I ruled in favor of admissibility, but gave a limiting instruction to the jury:

> The government also has provided . . . an application for use of an Old Navy Visa card in the name of Erick Diaz. The government argues that [this] act [is] of a similar nature to the acts charged in the indictment and can be used in a limited particular way. So I want to tell you what that way is.
>
> First of all, [this] act with relation to the Old Navy Visa card [is] not proof and cannot be considered by you as proof that the defendant committed the crimes charged. . . . What you may consider [it] is as follows: First, the issue of the identity of a person or persons making the [application] for a . . . credit card; second, whether or not the issues in the case—in our case on Counts One, Two and Four—are due to mistakes or accident or intentional and willful; third, whether or not there was some plan or intent or motive to perform the acts charged. [If] [t]here is some attitude of mind that is a relevant aspect of proof.
>
> So you may not use the evidence of the . . . application for an Old Navy card as evidence that because the defendant filled out . . . this application he must have filled out and signed the application for a passport dated September 15, 2008 or used the false Social Security number . . . .
>
> You can only use this evidence to prove some aspect of mind or identity. Was it the same person? Was it a different person? Was there a mistake that explained the different aspects of the application, or was it intentional? Was there some kind of intent that went through that you can see, or not. That is what the evidence can be used for and not the issuance, not the idea that because somebody did one thing one time, he will do it another time.

Transcript of Oral Argument at 445-47. I invited counsel to comment on the limiting instruction at the charging conference, and refashioned it to provide better clarity for the jury based on their concerns. See Transcript of Oral Argument at 363.

7

### d. Certain Statements by the Government in Summation

In his summation, the Government's attorney made several remarks to the jury about the nature of the evidence before them and the inferences they might take.

The Government was not able to produce the original of the Social Security card issued March 12, 2008, bearing Eric D.'s Social Security number. However, the Government offered in evidence, and I admitted, the original of the photocopy of the Social Security card actually submitted by Defendant in support of his application. In her summation, Defense Counsel argued that the Government's evidence had a critical weakness because the Government could not prove that Defendant actually possessed the Social Security card. In rebuttal, the Government attorney argued that the jury could fairly find that Defendant had possessed the card:

> Now, defense counsel spoke of the Social Security that was issued
> on March 12, 2008, this mystery card she would have you believe.
> Let's look at Government Exhibit 3. . . .[3] This is the
> card she was speaking of. Well, where else have we seen that
> card? . . . The application for the passport.
> This is not a mystery card, ladies and gentlemen.
> The defendant had that card on him. There is no mystery about
> who obtained that card. We don't need the document to see who
> obtained the card. The defendant had that card on him.

Transcript of Oral Argument at 410. I overruled Defense Counsel's objection to this statement. I ruled that the "jury will have its own evaluation and recollection of the evidence." Id.

Defense Counsel argued that the Government did not introduce evidence to show that Defendant had used the identification information at issue to obtain a driver's license. The Government attorney argued that the jury could infer this from the Defendant's use of the

---

[3] Government Exhibit 3 was the application for a Social Security card filled out by "Erick D." The card was issued March 12, 2008.

identification information to obtain a learner's permit, for the learner's permit was the basis to obtain a driver's license. Defense Counsel objected, and I overruled the objection.

Finally, Defense Counsel argued that the Government's failure to produce the testimony of a handwriting expert was fatal, for the Government could not show that Defendant had filled out the passport applications. However, the Government produced two Postal Service clerks who had each accepted one of Defendant's passport applications, each administering an oath to him and observing his signing of the applications.

## II.    Standard of Review

Federal Rule of Criminal Procedure 33 provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). The court must take into account all the circumstances, and make an objective evaluation. United States v. Lopac, 441 F. Supp. 2d 350, 360 (S.D.N.Y. 2006). To grant relief, the Court must find "a real concern that an innocent person may have been convicted." United States v. Bell, 584 F.3d 478, 483 (2d Cir. 2009) (internal quotation omitted). "The court is not required to view the evidence in the light most favorable to the government, but rather is to weigh the evidence and determine the credibility of witnesses." Lopac, 441 F. Supp. 2d at 360.

## III.    Discussion

Defendant contends that (i) the Government failed to disclose statements he made in response to interrogation, in violation of Federal Rule 16(a)(1)(A); (ii) evidence of the Old Navy Credit Card should have been excluded under Federal Rule of Evidence 404(b); (iii) the Government made improper and prejudicial remarks to the jury in summation; and (iv) the jury's

9

verdict on Count 4 is against the weight of the evidence under Flores-Figueroa.  I address these contentions in turn.

### a.  Propriety of Agent Payne's Trial Testimony

Defendant contends that the Government failed in its obligations under Federal Rule 16(a)(1)(A) because it did not disclose the full substance of Agent Payne's testimony prior to trial.  I disagree.

Federal Rule 16(a)(1)(A) provides, "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  To make out an error under Rule 16, a defendant must show both that the government violated the rule and that the violation caused "substantial prejudice."  United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998), cert. denied sub nom., Abouhalima v. United States, 525 U.S. 1112 (1999).  Substantial prejudice in this context is "more than that the statement was damaging to the defendant: the defendant must demonstrate that the untimely disclosure of the statement adversely affected some aspect of his trial strategy."  United States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994).  But, because the district court retains broad "broad discretion" to remedy Rule 16 violations, id., if the district court fashions a remedy that provides the defendant a reasonable and meaningful opportunity to alter his strategy, the district court may provide that opportunity in lieu of a new trial, see United States v. Miller, 116 F.3d 641, 681 (2d Cir. 1997).

In Miller, NYPD officers had seized a document while searching the residence of one of the defendants, which gave detailed accounts of drug transactions.  The Government failed to produce this document to the defendant prior to trial, but did produce it shortly before it

10

was to be introduced against the defendant during the trial. The Government represented that it simply did not realize the document was not in its possession prior to trial, and disclosed it as soon as they received it from the NYPD. Defense counsel objected under Rule 16, arguing that he had been deprived of an opportunity to obtain handwriting and fingerprint experts to challenge the Government's contention that his client was its author, and that introduction of the document required him to change his strategy midstream. 116 F.3d at 681. The district court declined to exclude the document, but told defense counsel he could have an opportunity to present his own experts during the defense case and could have a continuance if necessary to find one. The Court of Appeals affirmed this ruling, holding that in light of the Government's inadvertence and the opportunity provided to defense counsel to adjust his strategy, exclusion of the evidence was unnecessary. Id. The district court also noted that notwithstanding any impact the document had on defense counsel's theory of the case, defense counsel had evidence to support it. Id.

This case comes within the rule of Miller. The Government had limited time to interview Agent Payne and prepare him for trial, for he was deployed to Karachi, Pakistan, during the relevant pretrial period. As a courtesy to Defense Counsel, Agent Payne was produced to testify in person, and during that testimony, he made statements that, although they deviated from the substance of the notes disclosed prior to trial, were not so far outside the scope of what had been disclosed as to require striking the testimony. Experience teaches that witnesses often remember facts with greater, lesser, or different detail once they are actually in the witness box. The Government represented that, like Defense Counsel, it had never heard Agent Payne's additional comments before he appeared to testify at trial; there was no reason to doubt the Government's sincerity. In addition, although I did not think there was any unfairness,

11

and Defense Counsel had ample opportunity to impeach Agent Payne, I provided Defense Counsel with an opportunity to cure any unfairness and to review such a cure with me. She had nothing to offer.

Defense Counsel made full use of Agent Payne's deficient testimony. On cross-examination, she elicited that Agent Payne had no contemporaneous record of his comments.[4] Defense Counsel further pointed out to the jury in her summation that Agent Payne, a government employee, had testified inconsistently with his contemporaneous notes and report. In my jury instruction, I made clear that the jury could consider whether to credit Agent Payne's testimony, taking into account his allegiances to the Government.

I believe there was no unfairness to Defendant, and no fault on the part of the Government. There is no merit to Defendant's contention that Rule 16(a)(1)(A) was violated or that there should be a new trial.

### b.  The Old Navy Credit Card

Defendant next contends that admission of evidence of the Old Navy credit card and account information violated Federal Rule of Evidence 404(b). I disagree.

Rule 404(b) provides in relevant part,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When considering whether to admit such evidence, the Court considers "whether (1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair

---

[4] This point was emphasized by the similar point Defense Counsel was able to reveal about Agent Carpenter's testimony.

12

prejudice"; and (4) whether an appropriate limiting instruction is available.  United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009).

Admission of this evidence was appropriate.  First, the account information provided for the Old Navy credit card bore Eric D.'s Social Security number but Defendant's address, and the Government offered it for the purpose of showing that Defendant did not use the Social Security number accidentally.  This is an appropriate purpose.  Second, the question whether Defendant made purposeful use of Eric D.'s Social Security number to obtain identification was squarely at issue in this case: Defense Counsel's entire theory, from opening to summation, was that the Government could not prove that Defendant purposefully used someone else's identity information to obtain his own.  Third, given that Defendant's purpose was central to the case, the probative value sufficiently outweighed prejudice.  Finally, I took great care to instruct the jury that it should not use the information except for the purpose of evaluating the issues of purpose or mistake, and accidental or intentional use—the purposes approved by Federal Rule 404(b).  There is no reason to think the jury did not follow the instruction.  See, e.g., CXS Transp., Inc. v. Hensley, 129 S. Ct. 2139, 2141 (2009) (per curiam) ("[I]n all cases, juries are presumed to follow the court's instructions.").  This argument by Defendant does not provide a basis to grant a new trial.

### c. Government Remarks During Summation

Next, Defendant contends that the Government attorney made three inappropriate remarks during summation.  I disagree.

Improper prosecutorial comments do not compel a new trial unless they caused substantial prejudice to a defendant.  United States v. Burden, 600 F.3d 204, 221 (2d Cir. 2010). Substantial prejudice is prejudice that "so infect [s] the trial with unfairness as to make the

resulting conviction a denial of due process." United States v. Elias, 285 F.3d 183, 190 (2d Cir.

2002) (internal quotations omitted).  To evaluate possible prejudice, the Court considers (1) the

severity of the misconduct, (2) the measures the district court adopted to cure the misconduct,

and (3) the certainty of conviction absent the improper statements.  Id. at 221-22 (citing United

States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995).

       The Government's comments were not improper.  With regard to the first

argument, the Government simply argued to the jury that it did not need proof of physical

possession because evidence showed the Defendant submitted the card in support of his passport

application. This was completely proper.  As to the second argument, the Government made the

point that, because the learner's permit application and the New York State driver's license bore

the same photograph, name, address, and unique Client ID Number, the jury could reasonably

infer that the same person had applied for both forms of identification.  This was proper too.

Finally, the Government suggested to the jury that it could evaluate the handwriting on

Defendant's passport applications and compare it to the handwriting on the learner's permit

application, all of which were admitted into evidence.  This, too, was proper.  See Stokes v.

United States, 157 U.S. 187, 194 (1895) (jury is permitted to compare handwriting on items

properly admitted in evidence to see whether both items were written by the same person); see

also United States v. Rhodis, 58 F. App'x 855, 856-57 (2d Cir. 2003) ("A jury may compare a

known handwriting sample with another sample to determine if the handwriting in the latter is

genuine") (citing Fed. R. Evid. 901(b)(3)).

       Any prejudice arising from these comments would be insufficient to warrant post-

trial relief, for the Government's evidence, presented through an exhaustive documentary display

and testimony of a variety of witnesses, conclusively demonstrated that Defendant represented

himself as Erick D., using Eric D.'s Social Security number and identification information to

apply for a passport and a learner's permit. In view of the ample evidence of Defendant's guilt,

he cannot maintain that any improprieties in these comments infected the proceedings to the

point that his conviction amounts to a denial of due process. Elias, 285 F.3d at 191; United

States v. Modica, 663 F.2d 1173, 1182 (2d Cir. 1981) (where evidence against Defendant is

overwhelming, alleged improprieties in closing remarks are insufficient to find prejudice).

### d.  Weight of Evidence on Count 4

Finally, Defendant argues that the jury's verdict on Count 4 was against the

weight of the evidence. Again, I disagree.

Count 4 charged Defendant with aggravated identity theft, under 18 U.S.C.

§ 1028A. The statute provides,

> Whoever, during and in relation to any felony violation
> enumerated in subsection (c), knowingly transfers, possesses, or
> uses, without lawful authority, a means of identification of another
> person shall, in addition to the punishment provided for such
> felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). To establish the element of "knowingly transfers, possesses, or uses,"

the Government must show "that the defendant knew that the means of identification at issue

belonged to another person." Flores-Figueroa, 129 S. Ct. at 1894.

In this case, evidence plainly supported the Government's contention that

Defendant knew the identification information he purchased for $500 belonged to a real person.

First, Agent Payne testified that Defendant admitted as much, and that information was reflected

in Agent Payne's contemporaneous notes.[5] Second, Defendant's confession, in which he

apologized to any person whom he might have harmed by using the information at issue, showed

his recognition that his actions impacted a real person. Third, Defendant possessed an Old Navy

---

[5] It was also reflected in Agent Carpenter's testimony.

15

credit card and a New York State driver's license, both obtained prior to September 15, 2008, and both evidencing use of Eric D.'s identity information and Social Security number. The Old Navy credit card account information was issued to Defendant using Eric D.'s identity information and Social Security number; and from the fact that Defendant's driver's license bore the same name, photograph, and Client ID Number as his learner's permit application, it was inferable that Defendant used Eric D.'s identity information and Social Security number to apply for the learner's permit and subsequently to obtain the driver's license. From this, the jury could reasonably infer that by the time Defendant applied for a passport on September 15 and September 29, 2008, he knew that the identity information and Social Security number he was using belonged to a real person.

IV.    **Conclusion**

As Defendant has raised no errors meriting a retrial, the motion is denied. The Clerk shall terminate the motion (Doc. No. 38).

SO ORDERED.

Dated:        March 7, 2011
              New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

☙AO 245B   (Rev. 06/05) Judgment in a Criminal Case
          Sheet 1

# UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| SOUTHERN | District of | NEW YORK |

UNITED STATES OF AMERICA
V.
Joselito Vasquez Gomez

## JUDGMENT IN A CRIMINAL CASE

Case Number:  1: S1 10 Cr. 00397 (AKH)

USM Number:  91538-054

Mary Mulligan/ Jonathan Cohen
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

X was found guilty on count(s)  1, 3, 5, 6
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1542 | False Statements in a U.S. Passport Application | 9/15/2008 | 1 |
| 42 USC 408(a)(7)(B) | Misuse of a Social Security Number | 9/15/2008 | 3 |
| 42 USC 408(a) (7)(B) | Misuse of a Social Security Number | 10/16/2007 | 5 |
| 18 USC 1028A | Aggravated Identity Theft | 9/15/2008 | 6 |

The defendant is sentenced as provided in pages 2 through  6       of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

| | | | | | |
|---|---|---|---|---|---|
| x Count(s) | All open counts | ☐ is | x | are | dismissed on the motion of the United States. |
| ☐ Underlying | _____ | ☐ is | ☐ | are | dismissed on the motion of the United States. |
| ☐ Motion(s) | _____ | ☐ is | ☐ | are | denied as moot. |

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/11

9/7/2011
Date of Imposition of Judgment

Signature of Judge

Hon. Alvin K. Hellerstein, U.S. District Judge
Name and Title of Judge

Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page    2    of    6

DEFENDANT:        **Joselito Vasquez Gomez**
CASE NUMBER:      **1: S1 10 Cr. 00397 (AKH)**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:        **21 months on counts 1, 3 and 5 to run consecutive to 24 months on count 6 for a total of 45 months.**

x    The court makes the following recommendations to the Bureau of Prisons:
     that the defendant be confined as close to the NYC area as possible.

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

   ☐    at    _____    ☐  a.m.    ☐  p.m.    on    _____    .

   ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐    before 2 p.m. on    _____    .

   ☐    as notified by the United States Marshal.

   ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on    _____    to    _____

a _____    , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By    _____
      DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:       Joselito Vasquez Gomez
CASE NUMBER:     1: S1 10 Cr. 00397 (AKH)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     3 years on counts 1,3, 5 and 1 year on count 6 to run concurrent.

 

 

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if

x    The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or student, as directed by the probation officer.  (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case      Case 1:10-cr-00397-AKH    Document 56    Filed 09/22/11    Page 4 of 6
           Sheet 3A — Supervised Release

Judgment—Page ____4____ of ____6____

DEFENDANT:        **Joselito Vasquez Gomez**
CASE NUMBER:      **1: S1 10 Cr. 00397 (AKH)**

## ADDITIONAL SUPERVISED RELEASE TERMS

1. The defendant shall obey the immigration laws and comply with the directives of immigration authorities.

2. The defendant shall be supervised by the district of residence.

**SPA-21**

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:             Joselito Vasquez Gomez
CASE NUMBER:           1: S1 10 Cr. 00397 (AKH)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 400.00 | $ | $ |

☐   The determination of restitution is deferred _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS | $            $0.00 | $            $0.00 | |

☐   Restitution amount ordered pursuant to plea agreement _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   the interest requirement is waived for     ☐  fine   ☐  restitution.

☐   the interest requirement for     ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

**DEFENDANT:**       Joselito Vasquez Gomez
**CASE NUMBER:**     1: S1 10 Cr. 00397 (AKH)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   x   Lump sum payment of $ __400.00_____   due immediately, balance due

    ☐   not later than_____ , or
    ☐   in accordance  ☐  C,   ☐  D,   ☐   E, or   ☐  F below; or

B   ☐   Payment to begin immediately (may be combined      ☐ C,      ☐ D, or      ☐ F below); or

C   ☐   Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to     _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to     _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence     _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time;

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# <u>CERTIFICATE OF SERVICE & CM/ECF FILING</u>

11-3918     USA v. Gomez

        I hereby certify that I caused the foregoing Brief and Special Appendix of Defendant-Appellant to be served on counsel for Appellee via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1, and one copy by Federal Express Next Business Day delivery:

Jonathan Cohen
Katherine Polk Failla
Assistant United States Attorneys
United States Attorney's Office,
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2408

I certify that an electronic copy was uploaded to the Court's electronic filing system. Six hard copies of the foregoing Brief and Special Appendix of Defendant-Appellant were sent to the Clerk's Office By Hand Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8576

on this 3rd day of January 2012.

Notary Public:

/s/ Ramiro A. Honeywell

**Sworn to me this**

January 3, 2012

RAMIRO A. HONEYWELL
Notary Public, State of New York
No. 01HO6118731
Qualified in Kings County
Commission Expires November 15, 2012

/s/ Samantha Collins

SAMANTHA COLLINS
Record Press, Inc.
229 West 36th Street, 8th Floor
New York, New York 10018
(212) 619-4949